1   **COMPLAINT BY A PRISONER UNDER THE CIVIL RIGHTS ACT, 42 U.S.C. § 1983**

2   Name:   NORSWORTHY, MICHELLE-LAEL BRYANNA/JEFFREY BRYAN

3          *(Last)*                          *(First)*                    *(Middle)*

4   Prisoner Number:   CDCR#: D54100

5   Institutional Address:   P.O. BOX 705

6                            SOLEDAD, CALIFORNIA   93960

FILED

FEB 1 4 2014

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

**(PK)**

**JST**

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10  NORSWORTHY, MICHELLE-LAEL B./JEFFREY B.  ) **CV 14 0695**
    *(Enter your full name.)*                )

11                                           )
                    vs.                      )  Case No. _____
12                                           )  *(Leave blank; to be provided by Clerk of Court)*
    BEARD, JEFFREY, CDCR SECRETARY           )
13                                           )  **COMPLAINT UNDER THE**
    KELSO, CLARK, MEDICAL RECEIVER           )  **CIVIL RIGHTS ACT,**
14                                           )  42 U.S.C. § 1983
    SPEARMAN, M.E., CTF WARDEN , et al,...   )
15  *(Enter the full name(s) of the defendant(s) in this action.)* )  PRISON MEDICAL/HEALTH CARE:
16                                           )  "MEDICALLY          NECESSARY"

                                                SURGICAL PROCEDURE.
17  **I. Exhaustion of Administrative Remedies.**

18  *Note: You must exhaust available administrative remedies before your claim can go forward. The court will dismiss any unexhausted claims.*

19  A.   Place of present confinement   CORRECTIONAL TRAINING FACILITY (CTF)

20  B.   Is there a grievance procedure in this institution?   YES ☒   NO ☐

21  C.   If so, did you present the facts in your complaint for review through the grievance

22       procedure?   YES ☒xxx   NO ☐

23  D.   If your answer is YES, list the appeal number and the date and result of the appeal at each

24       level of review.   If you did not pursue any available level of appeal, explain why.

25          1. Informal appeal: ____ SEE ATTACHED COMPLAINT/EXHIBITS

26  _____

27  _____

28  _____

COMPLAINT *Page 1 of 4*

1    2. First formal level: ___SEE ATTACHED COMPLAINT/EXHIBITS_____

2    _____

3    _____

4    3. Second formal level: __SEE ATTACHED COMPLAINT/EXHIBITS_____

5    _____

6    _____

7    4. Third formal level: ___SEE ATTACHED COMPLAINT/EXHIBITS_____

8    _____

9    _____

10   E.   Is the last level to which you appealed the highest level of appeal available to you?

11        YES ☒    NO☐

12   F.   If you did not present your claim for review through the grievance procedure, explain why.

13   _____N/A_____

14   _____

15   _____

16   **II.  Parties.**

17   A.   Write your name and present address. Do the same for additional plaintiffs, if any.

18   NORSWORTHY, MICHELLE-LAEL BRYANNA/JEFFREY BRYAN

19   CORRECTIONAL TRAINING FACILITY (CTF)

20   _____

21   B.   For each defendant, provide full name, official position and place of employment.

22   BEARD, JEFFREY, SECRETARY OF CORRECTIONS, SACRAMENTO, CALIFORNIA

23   KELSO, CLARK, MEDICAL RECEIVER, SACRAMENTO, CALIFORNIA

24   SPEARMAN, M.E., WARDEN OF CTF, SOLEDAD, CALIFORNIA

25   ADAMS, A, CHIEF MEDICAL EXECUTIVE OF CTF, SOLEDAD, CALIFORNIA

26   ZAMORA, L.D., CDCR APPEALS CHIEF, SACRAMENTO, CALIFORNIA

27   _____

28   _____

**COMPLAINT** *Page 2 of 4*

1  **III. Statement of Claim.**

2     State briefly the facts of your case. Be sure to describe how each defendant is involved and

3  to include dates, when possible. Do not give any legal arguments or cite any cases or statutes. If
   you have more than one claim, each claim should be set forth in a separate numbered paragraph.

4

5  _____ SEE ATTACHED COMPLAINT/EXHIBITS _____

6  _____

7  _____

8  _____

9  _____

10 _____

11 _____

12 _____

13 _____

14 _____

15 _____

16 **IV. Relief.**

17    Your complaint must include a request for specific relief. State briefly exactly what you
   want the court to do for you. Do not make legal arguments and do not cite any cases or statutes.

18

19 _____ SEE ATTACHED COMPLAINT/EXHIBITS _____

20 _____

21 _____

22 _____

23

24 **I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.**

25 Signed this 27 day of _January_ , 20 14

26

27                                                    _(Plaintiff's signature)_

28                                          *Please continue to the next page.*

COMPLAINT *Page 3 of 4*

## MAGISTRATE JUDGE JURISDICTION

Please indicate below by checking **one** of the two boxes whether you choose to consent or decline to consent to magistrate judge jurisdiction in this matter. Sign this form below your selection.

☐    **Consent to Magistrate Judge Jurisdiction**

In accordance with the provisions of 28 U.S.C. § 636(c), I voluntarily **consent** to have a United States magistrate judge conduct all further proceedings in this case, including trial and entry of final judgment.

**OR**

☒    **Decline Magistrate Judge Jurisdiction**

In accordance with the provisions of 28 U.S.C. § 636(c), I **decline** to have a United States magistrate judge conduct all further proceedings in this case, including trial and entry of final judgment.

Signed this 27 day of January , 2014

*(Plaintiff's signature)*

COMPLAINT *Page 4 of 4*

NORSWORTHY, MICHELLE-LAEL BRYANNA/JEFFREY BRYAN

P.O. BOX 705

SOLEDAD, CALIFORNIA   93960

U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NORSWORTHY, MICHELLE-LAEL B./JEFFREY B. | CASE#: |
| VS | COMPLAINT UNDER THE CIVIL RIGHTS |
| BEARD, JEFFREY, CDCR SECRETARY | ACT, 42 USC, 1983 |
| KELSO, CLARK, CDCR MEDICAL RECEIVER | |
| SPEARMAN, M.E., CTF WARDEN | PRISON MEDICAL/HEALTH CARE: A |
| ADAMS, A., CTF CHIEF MEDICAL EXECUTIVE | MEDICALLY NECESSARY SURGICAL |
| ZAMORA, L.D., CDCR APPEALS CHIEF | PROCEDURE |

### 1. JURISDICTION & VENUE

This is a civil action authorized by 42 USC section 1983 to redress the depri-
vation, under the color of state law, of rights secured by the Constitution of
the United States. The court has jurisdiction under 28 USC sec., 2201 and 2202.
Plaintiff's claims for injunctive relief are authorized by 28 USC sec., 2283 and
2284, and rule 65 of the Federal rules of Civil Procedure.

The Northern District of California is an appropriate venue under 28 USC sec.,
1391(b)(2) because it is where the events giving rise to this claim occurred.

### 2. PLAINTIFF

Plaintiff, NORSWORTHY, is a prisoner within the California Department of
Corrections and Rehabilitation (CDCR), and is currently housed at the Correctional
Training Facility (CTF), Soledad, California.

### 3. DEFENDANTS

Defendant, BEARD is the Secretary of Corrections and, therefore, he is respon-
sible for the overall operations of the Department, and each institution under
its jurisdiction.

Defendant, KELSO is the CDCR Medical Receiver and, therefore, he oversees all
medical decisions made by the CDCR and its medical personnel. The receiver is
suppose to know well the meaning of "MEDICAL NECESSITY" AND "MEDICALLY NECESSARY"
health care and surgeries. Receiver Kelso is a direct participant in the admini-
strative appeals process in this case, and he allowed a denial of the appeal at
issue, which contains very strong language in support of Sex Reassignment Surgery
(SRS) as a "Medical Necessity" in plaintiff's case.

Defendant, SPEARMAN is the warden of CTF and, therefore, he is responsible for
the overall operations of CTF, and for each inmate housed within its borders.

Defendant, ADAMS is the CTF Chief Medical Executive, and directly participated
in the denial of the SRS, deemed "Medically Necessary"in plaintiff's case by a
hired psychotherapist, although she knows it can cure plaintiff's health problems.
As a reviewer of the case, at 2nd level of review, she must be held to account
because having the power and authority to deny the surgery means that she has
the power and authority to approve such medical procedures.

Defendant, ZAMORA is the Chief of Appeals, in this case, at the third level of
review, and, obviously, by participation in the decision making process  has the
power and authority to deny and/or approve medical surgeries; although Zamora is
not qualified medical personnel allowed to treat any of a given inmate's medical
issues and/or conditions.

EACH DEFENDANT HAS THE POWER AND AUTHORITY  TO DENY & OBSTRUCT "MEDICALLY
NECESSARY" TREATMENTS AND PROCEDURES AND, THEREFORE, THEY, LOGICALLY, HAVE THE
POWER AND AUTHORITY TO APPROVE, ORDER, AND SCHEDULE SURGERIES. THE DEFENDANTS
ARE NAMED IN THIS COMPLAINT BECAUSE THEY ARE DIRECTLY INVOLVED IN THE CASE, AND
THEY HAVE VIOLATED PLAINTIFF'S CONSTITUTIONAL RIGHTS  &, ULTIMATELY, THEY ARE THE
POLICY AND DECISION MAKERS IN THE CDCR ON ISSUES SUCH AS THE ONE THAT GAVE RISE

-2-

TO THIS COMPLAINT. THE DEFENDANTS, BY DENYING PLAINTIFF A "MEDICALLY NECESSARY" SURGERY, HAVE VIOLATED THE 8TH AND 14TH AMENDMENTS OF THE U.S. CONSTITUTION. THUS, EACH DEFENDANT IS BEING SUED INDIVIDUALLY, AND IN THEIR OFFICIAL CAPACITY. AT ALL TIMES MENTIONED IN THIS COMPLAINT EACH DEFENDANT ACTED UNDER THE COLOR OF STATE LAW.

### 4. FACTS/EXHAUSTION/BACKGROUND

Plaintiff, a state prisoner, and Ward of the state, sought, and still seeks, Sex Reassignment Surgery (SRS), at state expense, using proper CDCR Appellate Procedure, while quoting CDCR policies and regulations, as well as State and Constitutional Law. Plaintiff did exhaust all levels of Administrative Review, and was denied by each reviewer. (See Exhibit "A"-CDCR 602 Administrative Appeal)

The administrative denials not only violated the 8th and 14th amendments but, they violated, existing CDCR and State policies and regulations, and Califor- nia Senate Bill "1079," all of which state, explicitly, inmates, as wards of the state, SHALL be provided all medical treatments and procedures that save life, cure illness, and alleviate pain, and that are deemed "MEDICALLY NECESSARY" by qualified personnel, who are licensed and employed by the state of California. (See Exhibit "C"-California Senate Bill 1079, authored by California Senator Rubio; The CDCR's Medical Services Overview, chapters 1 & 3; Access to Primary Care, chapter 4; Outpatient Specialty Services, chapter 8; Diagnostic Services, chapter 10; Correctional Clinical Case Management System (CCCMS), Mental Health, chapter 3; and the Treatment of Transgender Persons policies and procedures, Department Operations Manual (DOM) sections 62080.14, "Pre-operative Transsexual," and 91020.26, "GENDER DYSPHORIA TREATMENT"; The California Correctional Health Care Services manual (CCHCS) sections 4.26.1 & 4.26.2, dated and revised June 2007, January, June, and December 2012; The CDCR Medical Care Guide: GENDER IDENTITY DISORDER, dated December 2011)

The First level of the Administrative Appeals process was reviewed by one L. Fernandez, a Registered Nurse (RN). The involvement of a Nurse in this case is absurd because a decision for or against any type/kind of surgery can never be made by a nurse, in or out of prison. This was, palpably, a stalling tactic and intended to waste the first available level in plaintiff's "Due Process".

The Second level was reviewed by A. Adams, the Chief Medical Executive (CME), employed at CTF. She confirmed there does exist a serious and documented medical/mental health diagnosis and condition in plaintiff's case, and essentially supported plaintiff by her DENYING the appeal for the following reason:

> **"There is no blanket policy in the CDCR that prohibits Sex Reassignment Surgery (SRS)...over the past year and a half, neither your mental health nor your PCP has recommended SRS as treatment for any of your medical conditions."**

The date of her statement was **NOVEMBER 27, 2012.** Just two days later, on **NOVEM-BER 29, 2012,** plaintiff's Psychotherapist of two years, at the time, William Reese, Ph.D/MCSP, entered into the official records his recommendation that SRS was, and is, a "MEDICAL NECESSITY" in plaintiff's case. (See Exhibit "A2"-Reports by Doctor Reese and his Supervisors)

Based on the reason CME Adams gave for denying plaintiff's appeal, request for SRS, after she received Doctor Reese's recommendation she should have rescinded her previous decision and started open support of SRS in plaintiff's case. All she wanted was a recommendation from just one of plaintiff's doctors at the time.

The Third level was reviewed by one Doctor Raymond Coffin, Psy.D, on July 1, 2013, when he interviewed plaintiff for 2.5 hours at CTF, as a visitor from Sacramento, representing the CDCR's interests in the case.

-4-

The Third level decision maker in the case, Appeals Chief, L.D. Zamora, avoided mentioning his own Doctor's reports in his denial of plaintiff's request for SRS because Doctor Coffin couldn't avoid stating a few crucial facts that favor plaintiff's Administrative Appeal. In Doctor Coffin's own words, excerpted from his one-page initial assessment, he states:

> Plaintiff's, "Thoughts were logical and goal-oriented, with no evidence of delusions, auditory or visual hallucinations, or other Schneiderian symptoms...memory for recent and remote events was grossly intact...based on documents presented during the session and the consistency of responses provided, appeared to be reliable historian." (See Exhibit "A3"-Dr. Coffin's initial one-page assessment)

On October 10, 2013, Doctor Raymond J. Coffin made a "21"- page entry into plaintiff's Health Care Record (HCR)[*]that (1) re-diagnosed plaintiff's ever-present Gender Identity Disorder (GID)/Gender Dysphoria; (2) re-established the five (5) AXIS Points; and (3) revealed that his overall assessment of the facts supports Sex Reassignment Surgery (SRS), in plaintiff's case, just not at state expense. In his own words from that 21-page report:

> "Gender Identity Disorder Diagnostic Considerations: While I/P Norsworthy went through an extended period of gender identity confusion from adolescence through early adulthood, he appears to have consolidated his gender identity around that of a transgender female during the 1990s. For approximately 15-20 years he has been attempting to live as a female, within the constraints of his classification and housing as a male in the CDCR system. He received a thorough psychological evaluation in 2000 from Dr. Viesti who concluded that I/P Norsworthy met the criteria for a diagnosis of GID. I/P Norsworthy's subsequent behavior appears to confirm the accuracy of that diagnosis. On receipt of Dr. Viesti's psychological consultation report, Dr. Kohler confirmed I/P Norsworthy's appropriateness for hormone therapy, and initiated treatment." See pages 15-16 of his report.

*(HCR is also known as Unit Health Record (UHR))

"Based both on the results of the interview conducted for this evalu-
ation and review of available documentation since 1987, it does not
appear that I/P Norsworthy has pursued classification as a GID patient
for any "perceived cultural advantages" related to female status. While
the record shows that he has received single cell placement and special
housing in response to safety concerns related in part to his feminine
presentation, as well as occasional informal accommodations with re-
spect to showers and other "modesty" issues, those do not appear to
be the basis for I/P Norsworthy pursuing gender change treatment."

"Based on the above rationale, the following diagnosis is offered:

**Axis I**: Post-traumatic stress disorder, in partial remission (DSM-IV-
TR 309.81)
Gender Identity Disorder, sexually attracted to males (DSM-IV-TR 302.
85)
Alcohol abuse, in sustained Institutional Remission  (DSM-IV-305.00)
**Axis II**: 301.9 Personality Disorder NOS, with Narcissistic and Bor-
derline features.
**Axis III**: Gender Reassignment hormone treatment; HEP C
**Axis IV**: Moderate to Severe: Incarceration; history of rape; estrange-
ment from family.
**Axis V**: Current: 65  Highest in past year: 65."
See Page 16 of his report

"Summary and Conclusion: 1. Does the medical record reflect compliance
with current Department policy for classification as a Gender Identity
Disorder (GID) patient? **Substantially compliant.**" See Page 17 of his
report.

"**While it appears likely that his medical consultants would approve
him as a candidate for SRS as an 'elective' procedure, in the opinion
of this evaluator the available documentation does not establish SRS
as medically necessary at this time.**" See Page 19 of his report.

-6-

Doctor Coffin's initial report, one-page, is contained in Exhibit "A3", and his 21-page report, from where plaintiff obtained the above quotes, is contained in Exhibit "B2". Also, note, Exhibit "B2" contains plaintiff's 8-page response to Dr. Coffin's assessment of the case.

In spite of all the facts in favor of plaintiff's SRS, on October 25, 2013, Appeals L. D. Zamora, 3rd level administrative reviewer, denied plaintiff's need and request for SRS. Appeals Chief Zamora stated as his reasons for denial:

> " Your current providers have documented the determination that the subject surgery is not medically necessary for you. Your appeal of that determination does not include a showing that the subject surgery is medically necessary for you."

> "Previous orders from other medical facilities or staff, input from medical consultants, and/or your own personal preferences may be considered, but do not control the professional judgment of your current medical providers."

Legal Question: To what documents is Chief Zamora referring?
Legal Question: Who are these current providers Chief Zamora is talking about?

Plaintiff, in the Exhibits, provides the court with the notes, reports, and records authored by doctors, past and present, involved in plaintiff's GID treatment. They clearly  contradict and undermine Chief Zamora's claims that no current providers or therapists have stated SRS is a Medical Necessity in plaintiff's case. In fact, they prove him to be a liar.

Chief Zamora provided no names of doctors or their records to substantiate his denial of plaintiff's appeal. On his side, he had only one Doctor, Raymond Coffin, and even he stated plaintiff is a candidate for SRS which is why Chief Zamora made no mention of Dr. Coffin in his final report. Duly Note: Dr. Coffin is NOT now and has never been one of plaintiff's current providers. He is just a doctor the CDCR sent to interview plaintiff representing their interests.

As for the debate that the terms "MEDICALLY NECESSARY" & "MEDICAL NECESSITY" are no where found in plaintiff's current medical records, UHR. Well, the fact is, those terms are found most in 2012 and 2013 reports authored by plaintiff's primary medical providers and therapists in reference to SRS. How could Chief Zamora miss them all? If current medical judgment is all that the CDCR will recognize, plaintiff must point out the obvious: 2012 & 2013 are as current as it gets!

**BACKGROUND FACTS:**

Fact # 1:
Plaintiff has Exhausted all Administrative Remedies available, and was denied at each level of review by bureaucrats concerned more about costs and publicity than helping a human being find wellness and a cure for a serious and diagnosed medical condition and mental illness.

Fact # 2.
Plaintiff was born Jeffrey Bryan Norsworthy, a biological male. However, for the last 14 years plaintiff has lived under the care of doctors as a state diagnosed, confirmed,and validated transsexual/intersex person who identifies and is "acknowledged", and referred to,by CDCR staff as a woman/biological female. Therefore, plaintiff asks the court for the purposes of this proceeeding, "Sex reassignment Surgery," please refer to plaintiff with feminine pronouns, and use her chosen name when addressing her, Michelle-Lael Bryanna Norsworthy, and use her birth name only when absolutely necessary. This will lessen the severe emotional and psychological stress, and anxiety and burden, that always comes with "over-emphasis" on plaintiff's former masculinity.

Fact # 3.
Plaintiff, as Jeffrey B. Norsworthy, began serving a life term in 1987, for second degree murder. (See Exhibit "B3" for commitment case profile authored by one S. Thacker, Ph.D., representing the Board of Prison Hearings)

Plaintiff's adolescence and early adulthood were obviously filled with a great amount of anger and frustration due to failing to accept her true identity.

-8-

In 1996-1997, after years of psychoanalysis/psychotherapy, with the help of numerous people and doctors, plaintiff began coming-to-terms with the source of her aggression and hostility finding that it was the result of refusing and failing to express and from living contrary to her true identity.

In 1998-1999, a CDCR Correctional Counselor, G. S. Rasmussen, at Wasco State Prison (WSP), transferred plaintiff to the Department of Mental Health (DMH), situated within the California Medical Facility (CMF), for a Gender Dysphoria Evaluation.

Fact # 4.

In January 2000, the CDCR reclassified plaintiff a "Pre-Operative Transsexual,"* consistent with DOM sections 91020.26., and 62080.14., based on the following:

On October 7, 1999, plaintiff was referred to DMH, in/at CMF, where a thorough Gender Dysphoria evaluation was conducted until January 12, 2000, when one Ph.D C. R. Viesti, Specialist in Gender/Sexual dysphorias and disorders, concluded that plaintiff is, (without any doubt), a TRANSSEXUAL suffering from a very severe case of "Gender Identity Disorder (GID)"/"Gender Dysphoria (GD)", also known as, "Gender Incongruence (GI)". Thus, it can be inferred, by his diagnosis, plaintiff is in need of full sex reassignment procedures and treatment. (See Exhibit "B" for his report)

The following 14 years from Dr. Viesti's initial diagnosis, to present date, all follow-up orders from over "10" state licensed and employed doctors show that the feminiizing Endocrine therapy, and Psychotherapy, that was initiated in January 2000 based on the DMH diagnosis has not ceased or lessened and has remained at pre-operation dosages and intensity. In fact, over the last 14 years plaintiff has been CASTRATED, and has developed and evolved into an extremely feminine, female, and womanly person in form and stature. Plaintiff, according to several doctors notes and reports, "Presents-As-Female". This

(*the term "PRE-OPERATIVE TRANSSEXUAL" is defined as someone being prepared for Sex Reassignment Surgery (SRS). Apparently, based on the evidence, all the Exhibits, the CDCR has been preparing plaintiff for SRS for the last "14" years)

explains why plaintiff was classified by the CDCR a "Pre-operative Transsexual," who by mind, body and chemistry is, clinically and legally defined, a "Biological female". (Described, plaintiff is 140ish pounds, with the hairless skin texture, hips and buttocks shape, and breasts, lactate-ducted, as that of any born woman/female person. Plaintiff's permanent chemistry, specifically, her estrogen, testosterone , and prolactin levels, are the same and equal to that of any born woman/female person. See Exhibit "B"-Medical Records for 2013, most current, lab results)

Fact # 5.

Plaintiff has, verifiably through the exhibits, lived as a woman/female, under the direct and constant care of licensed specialist doctors, for 14 years, plus. However, the doctor for the Defendants, Raymond Coffin, in his report repeated, over and over, that plaintiff has lived as a woman/female for closer to 15-20 years. With that being stated, the court must account and factor into their ultimate decision, to qualify for SRS, in the United States, a Transsexual/Intersex person, according to the standards/guidelines setforth by WPATH,* must live as a woman/female under a doctors care for 2-5 years. From the DMH diagnosis, in 2000, to the first & directly stated and serious recommendation for SRS, as a medical necessity, in plaintiff's case, plaintiff had been living as a woman/female for 13 years. That far exceeds the standard/guideline to qualify for SRS.

### DOCTOR WILLIAM REESE, Ph.D/MSCP:

On November 29, 2012, plaintiff's psychotherapist of over two years, at the time, recommended, with urgent language, SRS is a "MEDICAL NECESSITY" in plaintiff's case. In his own words,

> "...IT IS CLEAR THAT CLINICAL MEDICAL NECESSITY SUGGEST AND MANDATE A SEX CHANGE MEDICAL OPERATION BEFORE NORMAL MENTAL HEALTH CAN BE ACHIEVED FOR THIS FEMALE PATIENT."

(*WPATH: The WORLD PROFESSIONAL ASSOCIATION FOR TRANSGENDER HEALTH, INC., is THE International Authority and Multidisciplinary Professional Association with extensive expertise in the standards for Transgender Health Care and Sex Reassignment Surgery (SRS).

"...SHE SHOULD BE SCHEDULED FOR THE SEX CHANGE OPERATION AS PART
OF A CLINICAL AND MEDICAL NECESSITY FOR HER HEALTH AND WELL-BEING."
(See Exhibits "A2" & "B" for this report and many others he's authored on the
subject at issue.)

Dr. Reese, after filing that initial report, filed report after report telling
the CDCR plaintiff is in need of, and substantially qualified for, Sex Reassign-
ment Surgery (SRS).

Dr. Coffin, the doctor for the defense, agrees that plaintiff is qualified for
SRS, and even goes to great lengths to re-diagnose the original GID diagnosis,
and, by doing so, confirms and validates plaintiff is a woman/female without the
proper genitalia.

Dr. Coffin, the doctor for the defense, attacks Dr. Reese incessantly. What
he doesn't do is explain that plaintiff's Primary Care Physician (PCP) and
Endocrinologists have no say concerning SRS unless it pertains to a "Contra-
indication" issue. MDs, PCPs, and Endocrinologists and even SRS Surgeons, act
only upon the diagnostic and therapeutic reports/notes, and recommendations of,
psychologists/psychotherapists when it comes to anything related to GID/GD/GI,
or SRS. The reason for that is, Gender Dysphoria/Gender Identity Disorder
diagnostic and treatment criterion is found only in the DIAGNOSTIC AND STATIS-
TICAL MANUAL OF MENTAL DISORDERS (DSM IV/DSM V). In other words, MDs and Sur-
geons will not touch a given Transsexual's case without first consulting and
being given guidance and recommendations by a given Transsexual's primary
psychotherapist.*

**Besides, what makes Dr. Coffin's credentials "Psy.D" superior to Dr. Reese's
"Ph.D and MSCP" ?**

(*A good example of the relationship between Mental Health and Medical doctors
lies in a HEP c Patient's request for chemical treatment. Mental Health
clinicians must first recommend and, then, approve such treatment or Medical
clinicians will not touch the case.)

-11-

Plaintiff has pursued SRS for 14 years, plus, following State/CDCR policies and regulations, and WPATH guidelines and standards verbatim.

Plaintiff sought and received a Gender Identity Disorder (GID) evaluation, and diagnosis, and the results were Positive for(Pre-operative)Transsexualism.

Plaintiff has remained in extensive, and intense, feminizing endocrine and psycho-therapies without breaks of any type or kind.

Plaintiff has acquired re-diagnosis, confirmations and validations, of ever-present Gender Identity Disorder/Gender Dysphoria and continuous and continual therapies under the care of many doctors, not just one.

Plaintiff has obtained a strong recommendation for SRS by a Qualified Psycho-therapist, and has faced no qualified opposition, and provides the court, in Exhibit "B" excerpts from plaintitff's medical history showing not one of her past or current doctors opposes the findings and recommendations of Doctor William Reeese.

Observe.

**EXHIBIT "B"**

1. Doctor Viesti's January 2000 diagnosis and report.

2. Plaintiff's current chemistry and lab results.

3. Doctor Lori Kohler, Endocrinologist, and Transgender Consultant confirms, as of 2011, plaintiff has remained in GID (pre-operative) related therapies for over a decade.

4. Doctor Ashiq V. Patel, Endocrinologist, and Transgender Consultant confirms, as of 2011 and 2013, plaintiff has remained in all GID related therapies in pursuit of SRS, and not only does he not oppose SRS in plaintiff's case, but he fully endorses it.

5. Doctor Pawan Kumar, Endocrinologist, and Transgender Consultant, with the Colonial Medical Group, in Bakersfield, California, confirms, as of 2013,and 2014, plaintiff has remained in all GID related therapies in pursuit of SRS. In not one of his reports, and the subject comes up frequently, does he oppose SRS in plaintiff's case.

-12-

6. Doctor Blizzard, in March 2009, just before plaintiff is gang-raped, uses feminine pronouns to help plaintiff settle in a new environment. She indicates that the person before her is a breasted transgender.

7. Doctor Kesces, in April 2009, establishes "Female Presentation," states that she sees history in the file of plaintiff being taken advantage of in the past, and plaintiff's fears that its about to happen again.

8.Psychiatric Social Worker Lebron, in late April 2009, shows there is constant discussion during therapuetic sessions concerning plaintiff's struggles with Gender Dysphoria.

9. Graphic Rape report that belongs here has been omitted for lack of relevance to this complaint. **PLAINTIFF'S PTSD STEMMING FROM THE MAY 2009 GANG-RAPE OF HER PERSON IS IN CHECK, AND SHE IS STABLE ENOUGH FOR SRS. EVEN THE DOCTOR FOR THE DEFENSE STATED THE PTSD IS IN "partial remission".**

10. Doctor Jane Chung, in March 2010, shows the SRS talk and GID Therapy were ongoing.

11. Doctor Z. Ahmed, plaintiff's current PCP, has done nothing to oppose SRS, and over the last few years has only confirmed plaintiff is a Male-to Female Transgender, issued Brassieres, and endorsed the orders of all Endocrinologists and Transgender Consultants.

12. Doctor Biggs, did nothing to oppose SRS, and all he's done is issue Brassieres.

13. Doctors C. Matlen, N. Asselborn, W. Reese, and CDCR Correctional Counselors, making up the members of plaintiff's **INTERDISCIPLINARY TREATMENT TEAM** stated and, then, signed the Treatment Plan reports confirming a few basic facts in support of plaintiff's case.

(1) IDTT report, dated 3/16/2012, they check the "MEDICAL NECESSITY" box on the form, and CONFIRM plaintiff is being treated for GENDER IDENTITY DISORDER, and recommend retention at Correctional Training Facility (CTF) for continuity of care.

(2) Mental Health Treatment Plan report, dated 7/3/2012, shows they all **confirm,** by their signatures on the report, SRS is a prevalent topic in relation to plaintiff's case, and that plaintiff is a "BIOLOGICAL FEMALE" by clinical and legal definition and standard.

-13-

14. Doctor William Reese, plaintiff's psychotherapist for two years before they reassigned him to another facility, due to this case, wrote a great number of reports on sessions with plaintiff. After writing his initial recommendation for SRS on 11/29/2012, plaintiff asked Dr. Reese the big question: DO YOU STAND BY THAT SRS RECOMMENDATION AS A MEDICAL NECESSITY IN PLAINTIFF'S CASE? His response to that is found in reports on the following dates after the report he authored in reponse to CME Adams' denial of plaintiff's request and appeal for SRS.

Doctor Reese informs the CDCR that SRS is Medically Necessary in plaintiff's case, as well as there is a need for a Name Change, and housing that comes with greater vigilance from staff.

He wrote reports on December 4th and 13th, 2012, and on March 28, 2013, and on April 4th and 18th, 2013, and May 2nd, 10th, 17th, and 24th, 2013.

As the court can easily surmise from the exhibits, Plaintiff is a heavily documented Transsexual/Intersex person, serving time for a crime unrelated to this complaint. Plaintiff, as a prisoner, has not forfeited her right to medical care and treatment that will save life, cure illness, and alleviate pain.

The court should independently examine plaintiff's body to ascertain precisely what the CDCR has done to her. She is a "Eunuch," and is living life in the painful and frustrating place "BETWEEN" worlds,because the CDCR won't finish what it started over a decade ago.

As for all the Exhibits. The court should factor this thought into their decision making process in this case: All reports, notes, documents, and forms are, state and CDCR legal tender, as they are OFFICIAL STATE RECORDS authored and signed by STATE EMPLOYEES and CONTRACTORS.

ARE NOT ALL DOCTORS AND CONSULTANTS LICENSED, HIRED AND EMPLOYED, BY THE STATE CONSIDERED ;' "EXPERT WITNESSES"?

-14-

## 5. LEGAL CLAIMS/CONTENTIONS

Plaintiff has a "Diagnosed" and "Serious" Medical & Mental Condition that requires constant treatment and attention from medical professionals.

Plaintiff must, due to 14 years of feminizing Endocrine* therapy, and CASTRATION, maintain current chemical levels or risk becoming sick, and even deformed. Only SRS can allow for a smaller dose of medications to be used in her GID-Transsexual treatment.

Plaintiff, after 14 years of feminizing Endocrine therapy, can never be Uncastrated or Re-masculinized. The female parts and shape of her body are permanent fixtures! (Note: Plaintiff's testes (testicles) are destroyed!)

Plaintiff, NEEDS, not WANTS SRS. Plaintiff would have preferred being born in the right body in the first place! She was not.

Plaintiff, who was diagnosed, confirmed, validated, and treated by the CDCR, the state of California, for 15-20 years, as a PRE-OPERATIVE TRANSSEXUAL, is not asking the CDCR, and the state, to finish what outside doctors started, but, what they started and are refusing to finish. The CDCR, and its doctors, diagnosed, and, then, created, molded, and refined plaintiff into the woman she is today. It is "Cruel and Unusual" to bring her to this point and place, condition and state, and all of a sudden say, oops, never mind! In a situation like this there's no taking back what has been done.

The DEFENDANTS violated plaintiff's 8th Amendment right to humane and adequate medical care consistent with her indivdualized medical and mental condition.

The Defendants, by denying plaintiff SRS, have violated the legal standard that states, all Wards, of a state, or federal jurisdiction, shall be provided health care for serious and diagnosed medical and mental health conditions which will save life, cure illness, and alleviate pain.

(*Various Estrogens and Depo-provera etc.)

The Defendants,having failed to protect plaintiff's rights, have violated the 14th amendment of the U.S. Constitution. Plaintiff, a prisoner, is still a citizen, by birthright, of the United States of America. Plaintiff has a right to be treated equally to that of any other citizen, incarcerated or not.

The Defendants  must afford plaintiff, a ward of the state, medically necessary health care without delay or hesitation.

The Defendants are fully aware that plaintiff is suffering in her current condition and state of being. How can they not, for they are the ones that made her the way she is, physically.

The Defendants are fully aware that plaintiff is, after 14 years of extreme and excessive dosages, dependent upon estrogen for survival. NOTEr Plaintiff has been on "Pre-Operation" dosages of feminizing medication for over a decade.  On the one hand, she can't live without those chemicals now, as she must have some form of hormone coursing through her body, and on the other hand, surgery is where pre-operation dosages end and medications are reduced to a less side-effect risky amount.

The Defendants have shown "deliberate indifference"in denying SRS to Plaintiff. They are fully aware that medications, castration, and psychotherapy are only a partial help to plaintiff's  serious and diagnosed medical and mental health condition.  Sedating a problem when there is an available cure violates the 8th amendment because the pain still exists when the medication wears off.


In a case known as Spicer V Williamson, 191 N.C. 487, 490, 132 S.E. 291, 293, (1926), the court stated,

> "It is but just that the public be required to care for the prisoner,
> who cannot by reason of the deprivation of his liberty, care for him-
> self."

In a case known as Kosilek v Maloney, 221 F. Supp. 2nd 156, 226, 251,
(D. Mass 2002); Kosilek v Spencer, CA No 00-12455 MLW, (2012/2013), District
court Judge Mark Wolf ordered SEX REASSIGNMENT SURGERY for the plaintiff, a
life term inmate, in the Mass. Department of Corrections, and the Supreme Court
upheld the decision and the surgery is pending. The case is identical to
this plaintiff's case and the reason for judgment in favor of plaintiff Kosilek's
case has everything to do with possessing the same documentary evidence as
the plaintiff in this case.

In a case known as Johnson v Bowers, 884, F.2d 1053 (8th Circuit 1989), the court
stated,

>    "...classifying a prisoner's surgery as 'ELECTIVE'...does not abrogate
>    a prison's duty to promptly provide 'Medically Necessary' treatment
>    to prisoners."

In cases known as Baker v Blanchette 186 F. Supp. 2nd 100, 105 N.4 D. Conn 2001;
and Delker v Maass 843 F. Supp 1390, 1399, (D. Or. 1994), the courts stated,

>    "Calling a surgery 'Elective' simply to avoid  doing the surgery is
>    a constitutional violation."

In  cases known as Lopez v Smith 203 F.3d 1122, (9th cir. 200); and Brown v.
District of Columbia 514 F. 3d 127 (DC Cir 2008) the courts stated,

>    "When prison guards or other non-medical officials deny/delay a
>    prescribed treatment that's a constitutional violation."

In cases known as Scott v Ambani 577 F.3d 642 (6th Cir 2009); Sprully Gillis
372 F 3d 218 (3rd Cir 2004); Meloy v Bachmeier 302 F3d 845, 849 (8th Cir 2002),
the courts stated,

>    "When a doctor fails to treat all of a prisoner's serious medical
>    needs he violates the law."

-17-

In a case known as Brock V Wright 315 F3d 158 162, the court stated,

"A serious medical need is a condition of urgency, one that may pro-
duce death, degeneration, or extreme pain."


(Quoting Hathaway v Coughlin 37 F 3d 63, 66 (2nd cir 1994); Nance V Kelly
912 F.2d 605, 607 (2nd cir 1990); and Johnson v Wright 412 F.3d 398, 403, (2nd
cir 2005))


In a case known as, Allard v Gomez 9 Fed APPX 793, (9th circuit 2001), the court
stated,

"Denying treatment based on a blanket administrative policy rather
than an individualized medical evaluation is unconstitutional."
(See also, Fields v Smith 712 F.supp 2d 830 (E.D. Wisc. 2012))


In a case known as Jones v Johnson 781, F2d 769, 771, the court stated,

"Using budgetary restrictions to justify refusing to do a medically
necessary procedure is "deliberate indifference"."
This is also a 9th circuit case, dated 1986.


In a case known as Estelle v Gamble 429 US 97 104-105, 97 S.CT 285, 291, 50 L
Ed 2d 251, 260, (1976), the court said,

"We therefore conclude that deliberate indifference to serious
medical needs of prisoners constitutes the 'unnecessary and wanton
infliction of pain' proscribed by the Eighth Amendment. This is true
whether the indifference is manifested by prison doctors in their re-
sponse to the prisoner's needs or by prison guards in intentionally
denying or delaying access to medical care or intentionally inter-
fering with treatment once prescribed."

(See also, Jett V Penner 439 F.3d 1091, 1096 (9th Cir 2006); Hill V Dekalb Reg'l
Youth Detention Center 40 F.3d 1176, 1187 (11th Cir 1994), these courts define
"serious medical need".)

-18-

In cases known as Estate of Cole by Pardue v FRomm 94 F.3d 254 (7th Cir 1996); and Gregoire v Class 236 F.3d 413 (8th cir 2000), these courts agreed,

"Mental Health concerns can qualify as a serious Medical Need."

In closing,

How many times must one Transsexual be evaluated and diagnosed before being given SRS?

Plaintiff, in the medical records, is constantly referred to as an Inmate-Patient (I/P). What is a patient if not one with a medical and/or mental health illness who can never stop being a patient until made whole and healthy by the proper curing procedures.

Respectfully Submitted,

DATE: 1/27/14

Michelle-Lael B. Norsworthy/

Jeffrey B. Norsworthy

## 6. PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully prays that this court enter judgment grant-
ing plaintiff:

A declaration that acts and omissions described herein violated plaintiff's
rights under the Constitution and laws of the United States.

A preliminary and permanent injunction ordering the defendants to provide
plaintiff SEX REASSIGNMENT SURGERY (SRS) forthwith.

A jury trial on all issues triable by jury.

Plaintiff's cost in this suit.

Any additional relief this court deems just, proper, and equitable.

DATED: 1/27/14

Respectfully Submitted,

Michelle-Lael B./Jeffrey B. Norsworthy

-20-

## 7. VERIFICATION

I have read the foregoing complaint and hereby verify that the matters alleged therein are true, except as to matters alleged on information and belief, and, as to those, I believe them to be true. I certify under the penalty of perjury that the foregoing is true and correct.


Executed at: Soledad, California, on / /2) / / 4

Michelle-Lael B. Norsworthy/Jeffrey B. Norsworthy
PLAINTIFF

-21-