1   CHRISTOPHER J. BANKS (Bar No. 218779)
    HERMAN J. HOYING (Bar. No. 257495)
2   MORGAN, LEWIS & BOCKIUS LLP
    One Market, Spear Street Tower
3   San Francisco, California  94105-1126
    Telephone:  415.442.1000
4   Facsimile:  415.442.1001
    cbanks@morganlewis.com
5   hhoying@morganlewis.com

6   ILONA M. TURNER (Bar No. 256219)
    JENNIFER ORTHWEIN (Bar No. 255196)
7   SHAWN THOMAS MEERKAMPER (Bar No. 296964)
    TRANSGENDER LAW CENTER
8   1629 Telegraph Avenue, Suite 400
    Oakland, California  94612
9   Telephone:  415.865.0176
    Facsimile:  877.847.1278
10  ilona@transgenderlawcenter.org
    jen@transgenderlawcenter.org
11  shawn@transgenderlawcenter.org

12  *Attorneys for Plaintiff,*
    MICHELLE-LAEL B. NORSWORTHY
13

14

15              UNITED STATES DISTRICT COURT

16            NORTHERN DISTRICT OF CALIFORNIA

17

18  MICHELLE-LAEL B. NORSWORTHY,      Case No. 3:14-cv-00695-JST

19              Plaintiff,            **PLAINTIFF'S REPLY MEMORANDUM
                                      IN SUPPORT OF MOTION FOR
20        v.                          PRELIMINARY INJUNCTION**

21  JEFFREY BEARD, A. NEWTON,         Hearing Date:    April 1, 2015
    A. ADAMS, LORI ZAMORA,
22  RAYMOND J. COFFIN, MARION         Time:            2:00 PM
    SPEARMAN, DAVID VAN LEER,
23  JARED LOZANO, and DOES 1-30,      Judge Jon S. Tigar

24              Defendants.           Courtroom 9

25

26

27

28

MORGAN, LEWIS &
  BOCKIUS LLP
 ATTORNEYS AT LAW
  SAN FRANCISCO

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ................................................................................................. 1

II.     THE EVIDENCE CLEARLY FAVORS PRELIMINARY INJUNCTION UNDER
        THE EIGHTH AMENDMENT ........................................................................... 2

        A.      Plaintiff Suffers Severe Distress as a Result of her Gender Dysphoria ................. 2

        B.      Defendants Have Denied Plaintiff Any Treatment for Her Persistent Pain
                and Suffering from Gender Dysphoria........................................................... 4

        C.      There Is No Difference of Medical Opinion That Justifies the Denial of
                Medically Necessary Surgery ...................................................................... 5

        D.      Failure to Send Plaintiff to a Specialist Violated the Eighth Amendment........... 10

III.    THE EVIDENCE CLEARLY FAVORS PRELIMINARY INJUNCTION UNDER
        THE FOURTEENTH AMENDMENT................................................................. 11

IV.     PLAINTIFF IS SUFFERING IRREPARABLE HARM ................................. 15

V.      CONCLUSION................................................................................................. 16

DB2/ 25793839.4

**CASES**

*Estate of Ford v. Ramirez-Palmer,*
    301 F.3d 1043 (9th Cir. 2002).................................................................................. 8

*Chalk v. U.S. Dist. Court Cent. Dist. of California,*
    840 F.2d 701 (9th Cir. 1988)................................................................................... 14

*De'lonta v. Johnson,*
    708 F.3d 520 (4th Cir. 2013).................................................................................... 4

*Fields v. Smith,*
    712 F. Supp. 2d 830 (E.D. Wis. 2010), *aff'd*, 653 F.3d 550 (7th Cir. 2011) ......................... 12

*Glenn v. Brumby,*
    663 F.3d 1312 (11th Cir. 2011)................................................................................ 12

*Hamilton v. Endell,*
    981 F.2d 1062 (9th Cir. 1992).................................................................................. 8

*Kosilek v. Spencer,*
    774 F.3d 63 (1st Cir. 2014) (en banc) ........................................................................ 9

*Kosilek v. Spencer,*
    889 F. Supp. 2d 190 (D.Mass.2012), *rev'd*, *Kosilek v. Spencer*, 774 F.3d 63 (1st Cir.
    2014) (en banc) ................................................................................................. 9

*McNearney v. Washington Dep't of Corr.,*
    No. C11-5930, 2012 WL 3545267 (W.D. Wash. June 15, 2012)........................................ 14

*Meriwether v. Faulkner,*
    821 F.2d 408 (7th Cir. 1987)............................................................................... 3, 4

*Norsworthy v. Beard,*
    No. 14-CV-00695-JST, 2014 WL 6842935 (N.D. Cal. Nov. 18, 2014)................................ 12

*Provencio v. Vazquez,*
    258 F.R.D. 626 (E.D. Cal. 2009) ............................................................................ 10

*Roberts v. Spalding,*
    783 F.2d 867 (9th Cir. 1986)................................................................................. 10

*Soneeya v. Spencer,*
    851 F. Supp. 2d 228 (D.Mass.2012) ..................................................................... 9, 14

*Stanley v. Univ. of S. California,*
    13 F.3d 1313 (9th Cir. 1994).................................................................................. 14

*Turner v. Safely,*
    482 U.S. 78 (1987) ........................................................................................... 12

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 25793839.4

ii

REPLY ISO MOT. FOR PRELIM. INJ
3:14-cv-00695-JST

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RULES AND REGULATIONS

California Code of Regulations, title 15, section 3350.1 .............................................................. 10

OTHER AUTHORITIES

Eighth Amendment ............................................................................................................. passim

Fourteenth Amendment ........................................................................................................ 10, 12

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 25793839.4

iii

REPLY ISO MOT. FOR PRELIM. INJ
3:14-cv-00695-JST

Plaintiff Michelle Norsworthy ("Plaintiff") respectfully submits this reply memorandum in support of Plaintiff's motion for preliminary injunction requiring Defendants to provide plaintiff with adequate medical care, including medically necessary sex reassignment surgery ("SRS").

## I.      INTRODUCTION[1]

There is no dispute with regard to the key factual and legal issues establishing Plaintiff's right to a preliminary injunction.  Defendants concede that Plaintiff has gender dysphoria and that, even after fifteen years of receiving counseling and hormone therapy, Plaintiff continues to experience anxiety and dysphoria.  Defendants concede that Plaintiff's treating mental health provider determined that "clinical medical necessity suggest and mandate a sex change medical operation before normal mental health can be achieved for this female patient."  Defendants agree that Plaintiff has met the key criteria for SRS under the prevailing standards for the treatment of transgender patients, the WPATH Standards of Care ("SoC").  Defendants acknowledge that courts have found treatment for gender dysphoria required under the Eighth Amendment. Defendants admit that – despite these understandings – Defendants refused to provide Plaintiff access to SRS or any other additional treatment to address her persistent anxiety and dysphoria. These concessions alone clearly favor granting injunctive relief to provide Plaintiff access to medically necessary SRS.

Defendants' Opposition fails to provide any valid basis to justify denying Plaintiff this medically necessary surgery.  Instead, Defendants rely upon misrepresentations of the factual record, misstatements of the applicable law and baseless, after-the-fact rationalizations to attempt to justify the deprivations of Plaintiff's rights under the Eighth and Fourteenth Amendments. Defendants' contentions are easily refuted.

---

[1]    Citations to "Ex." refer to the exhibits to the Declaration of Herman J. Hoying in Support of Plaintiff's Motion for Preliminary Injunction (Dkt. No. 66); citations to "Ettner Decl." and "Gorton Decl." refer to the expert declarations of Dr. Randi C. Ettner (Dkt. No. 63) and Dr. R. Nick Gorton (Dkt. No. 64), respectively; citations to "Levine Decl." refer to the declaration of Defendants' expert, filed under seal; citations to "Norsworthy Dep." refer to the transcript of the deposition of Plaintiff Michelle Norsworthy, submitted as Ex. D (Dkt. No. 66-4).

## II.    THE EVIDENCE CLEARLY FAVORS PRELIMINARY INJUNCTION UNDER THE EIGHTH AMENDMENT

### A.    Plaintiff Suffers Severe Distress as a Result of her Gender Dysphoria

Defendants baselessly claim that "there is no evidence that [Plaintiff] will suffer from severe emotional distress, or that she will resort to self-mutilative behavior, like auto-castration" if she is not granted injunctive relief.  (Dkt. No. 73 ("Opp'n") at 14.)  Defendants' position rests entirely upon one cherry-picked statement from the declaration of Plaintiff's expert, Dr. Ettner, in which she found that plaintiff experienced "mild symptoms of depression."  (*Id.* at 15 (quoting Ettner Decl. ¶ 70).)  Defendants completely ignore the preceding paragraph of Dr. Ettner's declaration, which expressly states that Plaintiff's anxiety "is severe, and represents subjective and panic-related aspects of anxiety.  These include feeling discomfort in [the] abdomen, feeling hot, heart pounding, feeling faint, and fear of 'the worst happening.'"  (Ettner Decl. ¶ 69.)  Dr. Ettner goes on to testify that Plaintiff "continues to suffer from gender dysphoria and attendant anxiety . . . Having a female body and male genitalia generates significant distress."  (*Id.* at 75.)

Defendants also ignore Plaintiff's own testimony describing the severe distress she continues to experience as a result of her gender dysphoria and the contemporaneous evidence of her suffering that was part of the record at the time Defendants denied her access to SRS.  At deposition, Plaintiff described the "psychological and emotional pain . . . frustration and agony" she experiences as a result of being "unable to complete [her] existence" without SRS.  (Norsworthy Dep. at 21:2-8.  The pain is excruciating, and the anxiety due to gender dysphoria manifests itself in sleeplessness, frustration, cold sweats, hypervigilance, mood swings, and panic attacks.  (*Id.* at 87:16-25; 88:1-10.)  Similarly, Plaintiff disclosed to Defendants during her appeal that she was "feeling miserable [from] not being able to fully express [her]self" (Ex. G at AG004954) and that she "suffers greatly w/out gender reassignment surgery" (*id.* at AG004951).  Defendants have not challenged Plaintiff's credibility.  To the contrary, Defendants repeatedly have acknowledged that Plaintiff has been "cooperative and responsive to all questions" and "appear[s] to be a reliable historian" of her condition.  (Ex. A at AG000859; *see also* Levine Decl. at 14 (stating that Plaintiff was reasonably open and honest).)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 25793839.4

2

REPLY ISO MOT. FOR PRELIM. INJ
3:14-cv-00695-JST

1        Plaintiff's significant ongoing distress also is documented in the treatment notes of

2    Plaintiff's mental health provider at the time of the appeal, Dr. Reese.  (*See generally* Ex. H.)

3    This suffering led Dr. Reese to conclude that "clinical medical necessity suggest and mandate a

4    sex change medical operation before normal mental health can be achieved for this female

5    patient."  (*Id.* at AG000416.)  Defendants offer no valid basis for disregarding Dr. Reese's

6    opinion.  Indeed, Defendants' own expert, Dr. Levine, acknowledged that Dr. Reese is a

7    "qualified mental health professional" (Levine Decl. at 10) and Defendants repeatedly have

8    recognized that a treating provider is better suited to determine a patient's level of distress than an

9    "expert" evaluating symptoms on the basis of a single interview.[2]  (*See, e.g.*, Zamora Dep. at

10    107:12-24; Ex. O at AG004912.)

11        The evidence thus is clear that Plaintiff continues to suffer from severe distress, dysphoria

12    and anxiety as a result of her gender dysphoria.  To the extent that Defendants contend that

13    Plaintiff must demonstrate that she "will resort to self-mutilative behavior, like auto-castration,"

14    or suicide (Opp'n at 14), Defendants' position finds no support in the law or among mental health

15    professionals.  For good reason:  establishing such a standard would leave inmates seeking

16    treatment no choice but to make suicide attempts or self-mutilate.  Even so, the record indicates

17    that transgender patients denied access to treatment often do resort to suicide or auto-castration

18    and that Plaintiff is at an increased risk of suicide as a result of her prior attempts and familial

19    history of suicide.  (Ettner Decl. ¶¶ 63, 75.)  That Plaintiff has not recently attempted suicide or

20    auto-castration in no way indicates that she is not suffering significant distress and pain as a result

21    of her gender dysphoria and clearly is not a bar to her receiving medically necessary treatment.

22    *See Meriwether v. Faulkner*, 821 F.2d 408, 413 (7th Cir. 1987) ("Courts have repeatedly held that

23    treatment of a psychiatric or psychological condition may present a 'serious medical need.'"

24    (citations omitted)).

25

26

27

28

---

[2]    Defendants fail to address the cases cited in Plaintiff's opening brief finding deliberate indifference where, as here, prison officials unreasonably rely upon the recommendations of an examining doctor over the recommendations of a treating doctor.  (Motion at 22-23.)

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 25793839.4                                3                    REPLY ISO MOT. FOR PRELIM. INJ
3:14-cv-00695-JST

1

  **B.**  **Defendants Have Denied Plaintiff *Any* Treatment for Her Persistent Pain and Suffering from Gender Dysphoria.**

2

3   Defendants contend that they cannot be found to have been deliberately indifferent to

4 Plaintiff's gender dysphoria because Plaintiff has been receiving counseling and hormone therapy

5 as treatment for her gender dysphoria for the past fifteen years.  (Opp'n at 13.)  This same

6 argument was rejected by the Fourth Circuit in *De'lonta v. Johnson*, 708 F.3d 520, 526 (4th Cir.

7 2013).  In *De'lonta*, plaintiff sought access to evaluation for SRS because, although the plaintiff

8 had been provided counseling and hormone therapy for her gender dysphoria, her dysphoria and

9 emotional distress persisted.  *Id.*  The Fourth Circuit held that "just because Appellees have

10 provided De'lonta with *some* treatment consistent with the GID Standards of Care, it does not

11 follow that they have necessarily provided her with *constitutionally* adequate treatment," noting

12 that the treatment provided consisted only of the first two stages of treatment established in the

13 SoC.  *Id.* (emphasis in original).  Defendants fail to distinguish *De'lonta* or provide any

14 justification for this Court to reach a different result.

15   As explained above, the evidence is undisputed that Plaintiff continues to suffer severe

16 distress, anxiety and dysphoria despite the counseling and hormone therapy Plaintiff has received

17 for the past fifteen years.  In fact, "[t]he long-term hormonal treatment [Plaintiff] has undergone

18 has served to intensify [her] anatomical dysphoria.  Having a female body and male genitalia

19 generates significant distress."  (Ettner Decl. ¶ 75.)  Defendants have denied Plaintiff ***any***

20 additional treatment to address these persistent symptoms of her gender dysphoria.

21   The situation here thus is the same as those in which Defendants acknowledge courts have

22 reasoned that "a complete denial of treatment to a transgender inmate would violate the Eighth

23 Amendment."  (Opp'n at 13 (citing *Meriwether*, 821 F.2d at 413.)  Defendants make no attempt

24 to argue that such cases were wrongly decided or to distinguish the mental distress suffered by the

25 inmates in those cases from the distress that Plaintiff continues to suffer as a result of the denial

26 of SRS. *See, e.g.*, *Meriwether*, 821 F.2d at 412-413 (finding that mental distress plaintiff

27 experienced as result of gender dysphoria constituted "serious medical need" even though it

28 presented "no perilous or life-threatening situations").

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 25793839.4        4       REPLY ISO MOT. FOR PRELIM. INJ
3:14-cv-00695-JST

1    Thus, Plaintiff does not seek SRS merely because it is her preferred treatment for her

2    gender dysphoria.  Plaintiff seeks SRS because Defendants have failed to offer her *any* additional

3    treatment for the persistent distress, anxiety and dysphoria that she experiences as a result of her

4    gender dysphoria despite having received counseling and hormone therapy for the past fifteen

5    years.  The SoC, the opinions of Plaintiff's treating mental health provider, Dr. Reese, and

6    treating transgender specialist, Dr. Kohler, and the expert opinion in this litigation all support

7    SRS as the only treatment available to address Plaintiff's persistent suffering.  (*See* Motion at 12-

8    18.)  Indeed, Defendants' own expert, Dr. Levine, concedes that "SRS will diminish [Plaintiff's]

9    dysphoria from the presence of her genitalia.  SRS is an effective treatment for this existential

10   distress."  (Levine Decl. at 21.)

11          **C.       There Is No Difference of Medical Opinion That Justifies the Denial of**
                       **Medically Necessary Surgery.**
12

13    Defendants next contend that Plaintiff's evidence "[a]t best . . . demonstrate a difference

14   of opinion as to whether her specific case requires sex reassignment surgery."  (Opp'n at 17.)

15   Tellingly, Defendants fail to offer any analysis specific to the evidence in this case.  As

16   demonstrated below, a review of the evidence shows that, in fact, there is no legitimate difference

17   of medical opinion and, regardless, the treatment chosen by Defendants – not providing any

18   additional care to Plaintiff – was "medically unacceptable under the circumstances."  (*Id.* (quoting

19   *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004).)

20    Without citation to any evidence in the record, Defendants contend that "medical

21   professionals differ on whether and when [SRS] is necessary for the mental distress that

22   accompanies gender dysphoria."  (Opp'n at 16.)  Defendants' own expert acknowledges,

23   however, that SRS "has been repeatedly positively evaluated for over twenty years" and is an

24   effective treatment to diminish gender dysphoria."  (Levine Decl. at 3, 6-7, 11, 21, 22.)

25   Moreover, evidence in the record clearly establishes that the SoC – which expressly state that

26   SRS "is essential and medically necessary to alleviate [certain patients'] gender dysphoria" – are

27   the internationally recognized standards of care for the treatment of gender dysphoria.  (*See* Dkt.

28   No. 10-1.)  Defendants do not argue that the SoC should not apply to Plaintiff's care and have

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 25793839.4                                      5                    REPLY ISO MOT. FOR PRELIM. INJ
                                                                         3:14-cv-00695-JST

1    offered no evidence to discredit or challenge the SoC.

2         Defendants' contention that "WPATH and experienced clinicians recognize that many

3    individuals make adaptations to their Gender Dysphoria symptoms without [SRS]" is irrelevant.

4    (Opp'n at 17 (quoting Levine Decl. at 22).)  That some individuals are capable of making this

5    adaptation without SRS says nothing about whether Plaintiff requires SRS as a treatment.  Both

6    the Standards of Care and courts require an individualized determination.  (*See* Dkt. No. 10-1;

7    Motion at 30.)

8         Under this individualized determination, there is no legitimate difference of opinion with

9    regard to whether Plaintiff requires SRS to alleviate the symptoms of her gender dysphoria.  Both

10   of the opinions upon which Defendants rely – Dr. Coffin and Dr. Levine – agree with Plaintiff

11   that SRS would be effective in treating her gender dysphoria.  (Ex. A at AG000863; Levine Decl.

12   at 21-22.)  Moreover, Defendants essentially concede that Plaintiff has satisfied the criteria for

13   SRS under the SoC.  (*See* Levine Decl. at 23-24.)  In particular, Dr. Levine acknowledges that

14   Plaintiff has "[p]ersistent, well documented gender dysphoria" and "[t]welve continuous months

15   of living in female gender role in prison."  (*Id.*)  Although Dr. Levine contends that Plaintiff

16   "does not have any time, let alone 12 months, of continuous living in the female gender role *in*

17   *society*" (Levine Decl. at 24) (emphasis added), there is no such requirement under the SoC.  The

18   SoC require only that the patient have "12 continuous months of living in a gender role that is

19   congruent with the patient's identity"  (Dkt. No. 10-1 at 39), which Dr. Levine concedes Plaintiff

20   has met.  The only other requirement that Defendants contend Plaintiff has failed to meet is the

21   requirement that a patient obtain two letters of recommendation from mental health professionals.

22   (Levine Decl. at 24.)  In fact, Plaintiff now has obtained recommendations from two mental

23   health professionals.  Dr. Levine concedes that "Dr. Reese's advocacy can be read as meaning

24   that a qualified mental health professional has made a judgment" that SRS is necessary.  (*Id.* at

25   10.)  Plaintiff also has been recommended for SRS by Dr. Ettner in the course of this litigation.

26   (Ettner Decl. at ¶ 78.)  Regardless, due to her incarceration, Plaintiff had no way to obtain the

27   required letters of recommendation without Defendants' assistance, and Defendants do not

28   contend that Plaintiff would be unable to obtain such letters if provided the necessary access.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 25793839.4                                      6                    REPLY ISO MOT. FOR PRELIM. INJ
                                                                         3:14-cv-00695-JST

1    Although Dr. Coffin and Dr. Levine both ultimately concluded that SRS is "elective" for

2    Plaintiff and thus not "medically necessary" (Ex. A at AG000863; Levine Decl. at 25) (emphasis

3    in original, first citation), the standard applied by each to determine medical necessity is wholly

4    unsupported by the SoC or the law.[3]  As explained in Plaintiff's opening motion, the approach

5    adopted by Dr. Coffin for medical necessity would require a patient to be psychotic or suicidal to

6    qualify for the surgery as a medical necessity.  (Motion at 26; *see also* Ettner Decl. ¶¶ 91-92;

7    Gorton Decl. ¶¶ 30-32.)  Defendants offer no defense of the approach applied by Dr. Coffin in

8    their opposition.

9        Similarly, Dr. Levine focuses his analysis of medical necessity on whether Plaintiff's life

10   is in danger or whether she is likely to physically injure herself.  (Levine Decl. at 21-22.)  Dr.

11   Levine offers no support for a test of medical necessity that would require a patient to engage in

12   this self-destructive behavior.  (*Id.*)  Dr. Levine's other opinions regarding medical necessity all

13   relate to his unsupported opinion that the requirements for obtaining SRS should be different for

14   incarcerated patients as opposed to patients in the community outside of prison.  As explained in

15   more detail in the accompanying Evidentiary Objections and Motion to Strike ("Motion to

16   Strike"), Dr. Levine lacks any expertise with regard to the treatment of patients in a prison setting

17   and his opinions are wholly unsupported by any research or testable hypotheses.  Instead, his

18   opinions are based upon two pieces of unreliable anecdotal hearsay – one of which Dr. Levine

19   expressly acknowledged is not true.  Moreover, Dr. Levine's opinions are contrary to the SoC,

20   which explicitly state that SRS must be provided as a treatment option for incarcerated

21   transgender patients based on the same criteria applied to transgender people "living in a non-

22   institutional setting within the same community."  (Dkt. No. 10-1 at § XIV, 43-44.)  Dr. Levine's

23   disagreement with the SoC appears to be based entirely upon his own unfamiliarity and

---

24   [3]    Defendants contend that "sex reassignment surgery is always an elective procedure" and thus
     is never medically necessary.  (Opp'n at 16 (quoting Levine Decl. at 25).)  Contrary to
25   Defendants' contention in support of its equal protection arguments, it thus appears that
     Defendants do, in fact, have a blanket policy against SRS: they contend at once that SRS is only
26   available when medically necessary but make clear that SRS can *never* be medically necessary
     because it is "elective."  Defendants also appear to be taking Dr. Levine out of context as he
27   seems to be arguing that SRS is always "elective" in the sense that there is "no immediacy to it"
     such that it could be performed without a patient's informed consent.  (Levine Decl. at 25.)  This
28   type of urgency, however, is not required under the Eighth Amendment or the standards for
     preliminary injunction.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 25793839.4                                  7                    REPLY ISO MOT. FOR PRELIM. INJ
                                                                     3:14-cv-00695-JST

1   misunderstanding of the current SoC.  Dr. Levine provides no research or reliable hypotheses to

2   support his opinion that the requirements for SRS should be different for incarcerated patients.

3        Courts refuse to shield Defendants from liability where the denial of medical care is based

4   upon a manufactured difference of opinion.  *Hamilton v. Endell*, 981 F.2d 1062, 1064 (9th Cir.

5   1992), *abrogated in part on other grounds by Estate of Ford v. Ramirez-Palmer*, 301 F.3d 1043,

6   1045 (9th Cir. 2002) ("By choosing to rely upon a medical opinion which a reasonable person

7   would likely determine to be inferior, the prison officials took actions which may have amounted

8   to the denial of medical treatment, and the 'unnecessary and wanton infliction of pain.").  Here,

9   Defendants did not cite to either Dr. Coffin's or Dr. Levine's opinions in their decisions denying

10  Plaintiff's appeal for SRS.  The decision to deny Plaintiff medically necessary SRS was instead

11  based upon the CDCR's blanket policy against the provision of SRS as a treatment for gender

12  dysphoria.  (Motion at 28-30.)  Dr. Coffin's opinion was obtained, after consulting with the legal

13  department, solely for the purpose of creating a pretextual justification for the enforcement of the

14  policy.  (*Id.* at 25-26.)  Indeed, the only basis for the selection of Dr. Coffin – who had no

15  experience providing mental health services to inmates with gender dysphoria or in evaluating

16  patients for SRS – was the circular logic that he had attended a training session with Dr. Levine,

17  at which Dr. Levine made clear that SRS was not an available treatment for patients with SRS

18  while incarcerated.[4]  (*Id.*)

19       Dr. Levine was not consulted with regard to Plaintiff's appeal for SRS until after the final

20  determination already had been made and thus Defendants could not have relied upon his opinion

21  in denying Plaintiff medically necessary SRS.  Regardless, Dr. Levine clearly is a hired gun

22  brought in after the fact to support Defendants' blanket policy of denying transgender inmates'

23  access to SRS.  As noted, Dr. Levine previously led a training program for CDCR in which he

24  made it clear that SRS was not an option for CDCR inmates.  (Ex. O.)

25       Dr. Levine's report in this case lacks credibility.[5]  Throughout, Dr. Levine fails to cite to

26  ───────────────

[4]   As explained in Plaintiff's Motion to Strike, there is absolutely no basis for Dr. Levine's
27  opinion that Dr. Coffin was qualified to render an opinion about the medical necessity of SRS as
a treatment for Plaintiff.  Dr. Levine did not even review Dr. Coffin's CV or the deposition
28  testimony in which Dr. Coffin describes his experience and the criteria he applied in forming his
opinion.
[5]   At least two courts already have called into question Dr. Levine's credibility as an expert

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO
DB2/ 25793839.4                                 8                    REPLY ISO MOT. FOR PRELIM. INJ
3:14-cv-00695-JST

1   any research or record evidence that support his positions.[6]  Dr. Levine's bias is reflected

2   throughout the report – *e.g.*, he repeatedly raises embarrassing and hurtful observations and

3   speculation regarding Plaintiff's alleged sexuality, which are unsupported by the evidence and

4   wholly irrelevant to the issues being decided, to argue that Plaintiff is responsible for the rapes

5   she has suffered in prison.  (*See* Motion to Strike)  The results-oriented nature of Dr. Levine's

6   report is further demonstrated by the fact that he did not even bother to review key evidence in

7   the case, including the deposition testimony of Plaintiff and Dr. Coffin.  (Levine Decl. at 2, 12.)

8   Remarkably, although submitted as a "rebuttal" report, Dr. Levine did not even review the expert

9   reports filed by Plaintiff's experts.  (*Id*.)  Dr. Levine's opinions – to the extent they survive

10  Plaintiff's Motion to Strike – thus are not credible and do not provide a justification for

11  Defendants' decision to depart from the SoC to deny Plaintiff access to medically necessary SRS.

12         Defendants' citation to *Kosilek v. Spencer*, 774 F.3d 63, 90 (1st Cir. 2014) (en banc) to

13  support the contention that there can be no finding of deliberate indifference where the record

14  contains two conflicting medical opinions is misplaced.  Defendants fail to heed the First

15  Circuit's warning that its decision "in no way suggests that correctional administrators wishing to

16  avoid treatment need simply to find a single practitioner willing to attest that some well-accepted

17  treatment is not necessary.  We do not establish here a *per se* rule allowing a dissenting medical

18  opinion to carry the day."  *Id.* at 90 n.12 (emphasis in original).  Nor do Defendants address the

19  language in *Kosilek* making clear that a "blanket policy" barring SRS would run afoul of the

20  requirement that medical care be individualized based on a particular prisoner's serious medical

21  needs.[7]  *Id.* at 91.  Regardless, *Kosilek* is not binding on this Court and, as eloquently stated in the

22  witness. *See Soneeya v. Spencer*, 851 F. Supp. 2d 228, 235 (D.Mass.2012) (rejecting Dr. Levine's
23  testimony that transgender patients who undergo sex reassignment surgery do not have positive
    results because this was found to be "contrary" to the Standards of Care and the medical
24  community); *Kosilek v. Spencer*, 889 F. Supp. 2d 190, 234 (D.Mass.2012), *rev'd*, *Kosilek v.
    Spencer*, 774 F.3d 63 (1st Cir. 2014) (en banc) (disregarding several of Dr. Levin's statements
    because he based his conclusions on "several erroneous assumptions . . .")
25  [6]  Dr. Levine cites only one study regarding transgender care and misrepresents its findings.  Dr.
    Levine contends that the study supports his conclusion that "positive follow-up data of operated
26  upon male to female patients . . . is less rosy as the years go by," but the study expressly states
    that its results "should not be interpreted such as sex reassignment per se increases morbidity and
27  mortality.  Things might have been even worse without sex reassignment."  Moreover, even Dr.
    Levine acknowledges that the study "considers SRS to be effective."  (Levine Decl. at 11.)
28  [7]  Indeed, as discussed above, it is made clear by Defendants' brief on this motion as well as its
    express and unwritten policies that it does have such a blanket policy barring SRS.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 25793839.4                                    9                    REPLY ISO MOT. FOR PRELIM. INJ
                                                                       3:14-cv-00695-JST

1  dissent, was wrongly decided based upon prejudices and fears that should not inform this Court's

2  decision.[8]  (Motion at 30.)

3        **D.    Failure to Send Plaintiff to a Specialist Violated the Eighth Amendment.**

4        Contrary to Defendants' representation, Plaintiff does not discuss Defendants' failure to

5  refer her to a specialist as a "fallback."  (Opp'n at 18.)  Rather, that failure further demonstrates

6  Defendants' deliberate indifference to Plaintiff's condition and constitutes a violation of the

7  Eighth Amendment.  (Motion at 23-24.)  Defendants fail to offer any meaningful way to

8  distinguish the cases cited in Plaintiff's Motion, claiming only that they are "non-binding" and

9  involve "severe pain and physical ailments."  (Opp'n at 19.)[9]  As explained above, Plaintiff has

10  provided ample evidence of the "severe pain" she experiences as a result of her gender dysphoria.

11  That Defendants failed to take any action to address this severe pain without even consulting with

12  a specialist clearly constitutes deliberate indifference.[10]  (Motion at 30-31.)  Defendants' failure to

13  consult a specialist is all the more egregious given that a transgender specialist that had

14  previously provided care to Plaintiff was working at the facility where Plaintiff was housed at the

15  time her appeal was considered.  (*Id.*)

16  **III.    THE EVIDENCE CLEARLY FAVORS PRELIMINARY INJUNCTION UNDER
17  THE FOURTEENTH AMENDMENT**

18        It is undisputed that the clear language of California Code of Regulations, title 15, section

19  3350.1 draws a distinction between vaginoplasty performed as treatment for cystocele and

20  rectocele and vaginoplasty performed for any other purpose.  Only the latter is subject to a

21

---

22    8   This week, Ms. Kosilek filed a petition with the Supreme Court seeking review of the First Circuit's decision.  Petition for Writ of Certiorari, *available at*
23  http://www.glad.org/uploads/docs/cases/kosilek-v-spencer/cert-petition.pdf
  9   Defendants' quote *Roberts v. Spalding*, 783 F.2d 867, 870 (9th Cir. 1986) for the proposition
24  that "[a] prison inmate has no independent constitutional right to outside medical care additional to and supplemental to the medical care provided by prison staff within the institution."  (Opp'n
25  at 19)  Although true that an inmate has no "independent constitutional right" to outside medical care, the law is clear that a prison must send an inmate to a specialist where the care available
26  within the institution is inadequate.  *Provencio v. Vazquez*, 258 F.R.D. 626, 637 (E.D. Cal. 2009) ("Access to the medical staff has no meaning if the medical staff is not competent to deal with the
27  prisoners' problems . . . . [The medical staff] must be able to treat medical problems or to refer prisoners to others who can.") (internal citation omitted).
  10  The evidence clearly shows that Dr. Coffin was not a transgender specialist but rather was
28  selected to examine Plaintiff solely because he had attended a training at which it was made clear that SRS was not an available treatment for CDCR inmates.  *See supra* note 3.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 25793839.4            10                  REPLY ISO MOT. FOR PRELIM. INJ
3:14-cv-00695-JST

1    presumption that the vaginoplasty is not medically necessary.  Despite this distinction,

2    Defendants claim that Section 3350.1 does not discriminate on the basis of gender or transgender

3    status because "[n]othing in the provision states that vaginoplasty will only be performed on

4    persons identified as female at birth, or to treat conditions other than gender dysphoria."  (Opp'n

5    at 20.)  Tellingly, however, Defendants fail to identify any condition other than gender dysphoria

6    for which the presumption against medical necessity would apply.  Defendants also fail to offer

7    *any* justification – let alone one substantially related to a sufficiently important governmental

8    interest – to justify the distinction between vaginoplasty provided for cystocele and rectocele and

9    vaginoplasty provided for gender dysphoria.  Contrary to Defendants' representation, Section

10   3350.1 is not "consistent with Medicare, California-based Medicaid, and many private insurance

11   companies' requirement that such procedures be authorized only when properly determined to be

12   medically necessary."  (Opp'n at 21.)  None of the policies cited by Defendants establish a

13   separate, more demanding administrative review process for vaginoplasty when sought as a

14   treatment for gender dysphoria than applies when vaginoplasty is sought for other conditions.

15          Moreover, the evidence is undisputed that, in practice, CDCR has a blanket policy against

16   providing SRS as a treatment for gender dysphoria and thus, as applied, Section 3350.1 and this

17   blanket policy clearly discriminate against transgender inmates.  Defendants' contention that

18   Plaintiff "can point to no policy—or application of policy – that denies transgender inmates

19   clinically necessary medical treatment" is belied by the ample evidence cited by Plaintiff in her

20   opening brief.  Dr. Kohler, who established the gender clinic for CDCR, testified that she

21   repeatedly was told that SRS was not a treatment option and that her understanding was that there

22   was a "blanket policy" against SRS.  (*See* Motion at 28-29.)  Although Defendants contend that

23   Dr. Kohler has not recently been involved in the care of transgender patients or CDCR policy

24   (Opp'n at 18), they fail to cite to a single policy that has changed to now permit SRS.  In fact, the

25   policies regarding transgender care still do not reference SRS as an available treatment.  (See Ex.

26   G at AG004992-4998.)  The most recent training program provided to CDCR staff in 2012 made

27   clear that SRS was not an available treatment for patients while incarcerated.  (Ex. O.)  Moreover,

28   there is an express policy in the CDCR's Department Operations Manual ("DOM") stating that

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 25793839.4

11

REPLY ISO MOT. FOR PRELIM. INJ
3:14-cv-00695-JST

1    "[i]mplementation of surgical castration, vaginoplasty, or other such procedures shall be deferred

2    beyond the period of incarceration.  Surgical procedure shall not be the responsibility of the

3    Department."  (Ex. T.)  Although the Opposition contends that this policy does not have the

4    "force of law" (Opp'n at 21),[11] Defendants testified at deposition that they were required to

5    follow this policy.  (Zamora Dep. at 132:11-15; Adams Dep. at 95:5-11; Newton Dep. 78:12-16.)

6    Defendants also testified that they were uncertain how to apply Section 3350.1 in a way that

7    would allow for SRS as a treatment for gender dysphoria.  (Zamora Dep. 149:3-20; Newton Dep.

8    86:4-15; Coffin Dep. 176:23-180:25; Adams Dep. at 101:2-103:20.)  The record thus is clear that

9    CDCR has a blanket policy against SRS that discriminates on the basis of transgender status.

10          Because these policies discriminate on the basis of transgender status, they are subject to

11   intermediate scrutiny.  *Norsworthy v. Beard*, No. 14-CV-00695-JST, 2014 WL 6842935, at *10

12   (N.D. Cal. Nov. 18, 2014) (referencing *Glenn v. Brumby*, 663 F.3d 1312, 1320 (11th Cir.

13   2011)).[12]  Defendants fail to offer any justification for the CDCR's discriminatory policies that

14   are substantially related to a sufficiently important governmental interest.  Defendants generically

15   state that the policies are "plainly reasonable in light of the unsettled and evolving medical and

16   social understanding of gender dysphoria and related issues."  (Opp'n at 23-24.)  Defendants'

17   unsupported reference to "unsettled and evolving medical and social understanding" is a classic

18   pretextual justification for discrimination – *i.e.*, that more time is needed before the minority can

19   be accepted and treated equally.  Here, it is also completely unsupported by the record.

20   Defendants' own expert acknowledges that "SRS is not thought to be experimental now that it has

21   been repeatedly positively evaluated for over twenty years . . .."  (Levine Decl. at 6-7.)

---

22   [11]   Defendants also contend that this policy in the DOM is somehow superseded by Section
23   3350.1, but Section 3350.1 makes no reference to SRS or to vaginoplasty as a treatment for
     gender dysphoria and thus does not directly contradict the DOM policy.

24   [12]   Contrary to Defendants' unsupported contention that Plaintiff's Fourteenth Amendment claim
     is "properly evaluated under the 'deliberate indifference' standard in the context of Norsworthy's
25   Eighth Amendment claim" (Opp'n at 22), courts are clear that the equal protection standards
     apply, even when challenging health care-related policies.  *See, e.g.*, *Fields v. Smith*, 712 F. Supp.
26   2d 830, 867 (E.D. Wis. 2010), *aff'd*, 653 F.3d 550 (7th Cir. 2011).  Similarly, although
     Defendants contend that "claims arising in the special context of correctional institutions are
27   normally analyzed under the deferential standards prescribed by *Turner v. Safely*, 482 U.S. 78,
     89-91 (1987)," Defendants acknowledge that the standard does not apply where, as here, the
28   policy is alleged to be based upon animus toward a politically unpopular group.  (Opp'n at 22-
     23.)

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 25793839.4                                          12                         REPLY ISO MOT. FOR PRELIM. INJ
                                                                                   3:14-cv-00695-JST

1    Nor do Defendants' contrived safety concerns justify the discriminatory policies. As a

2    preliminary matter, Defendants fail to identify any contemporaneous evidence suggesting that

3    safety concerns motivated 3350.1, the DOM policy, CDCR's unwritten blanket policy prohibiting

4    SRS or Defendants' decision not to provide Plaintiff with SRS. In fact, there is no reference to

5    safety concerns in any of the CDCR's policies regarding the treatment of gender dysphoria or in

6    any of the decisions on Plaintiff's appeal seeking SRS. The only evidence of any purported

7    safety concerns comes in the form of a declaration prepared specifically for this litigation and

8    submitted with Defendants' Opposition.[13]

9    Regardless, the declaration fails to provide any valid justification for the CDCR's

10   discriminatory policies. Ms. Harrington states that "[t]here are safety and security concerns

11   presented by arranging for an inmate's transportation and hospitalization for any surgery" and

12   that "[a]rranging for an inmate's sex reassignment surgery . . . [has] no precedent in California's

13   prison system or in any other U.S. correctional environment of which I am aware." (Harrington

14   Decl. at ¶ 6.) Notably, Ms. Harrington does *not* testify that arranging for SRS would pose any

15   unique challenges or safety concerns, let alone concerns significant enough to justify a

16   discriminatory policy. Similarly, Ms. Harrington testifies that "significant safety and security

17   concerns would arise if CDCR attempted to house Norsworthy in an all-female facility" and that

18   "an inmate's sex reassignment surgery while incarcerated will be a matter of first impression that

19   would present significant challenges to CDCR and likely create significant risks to Norsworthy

20   and other inmates." (*Id.* at ¶ 8.) Notably, Ms. Harrington does not contend that CDCR is

21   incapable of addressing these purported "significant risks." Nor could she, as she acknowledges

22   that CDCR already is housing a transgender female inmate that received surgery prior to being

23   incarcerated. (*Id.* at ¶ 6.)

24   Moreover, Ms. Harrington's speculative concerns regarding the safety issues posed by

25   housing a transgender female inmate with cisgender female prisoners is steeped in gender

---

[13]   Tellingly, Dr. Levine – Defendants' psychiatrist expert with no experience in prison
administration – actually was the first one to raise potential safety concerns. (Levine Decl. at 8.)
Dr. Levine failed to cite any evidence to support these purported safety concerns and none of the
evidence Dr. Levine considered in drafting his report indicated any safety concerns related to
SRS. Only *after* Dr. Levine finalized his report did Defendants locate a declarant to offer
testimony regarding the purported safety concerns first raised by Dr. Levine.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 25793839.4                                    13                    REPLY ISO MOT. FOR PRELIM. INJ
3:14-cv-00695-JST

1    stereotypes and bias.  For instance, Ms. Harrington's argument is premised upon the unsupported

2    premise that a transgender female inmate who has received SRS will be recognized as different

3    from – and act differently toward – cisgender female inmates.  Ms. Harrington's suggestion that

4    there is no place in a female institution for an inmate who has committed domestic violence

5    against women is absurd as there clearly also are cisgender females who have committed

6    domestic violence against their same-sex partners.

7        As such, Defendants' unsupported, after-the-fact safety concerns should be disregarded

8    entirely, but, at any rate, are not sufficient to justify the imposition of the discriminatory policies

9    against SRS or the denial of a medically necessary treatment.

10   **IV.    PLAINTIFF IS SUFFERING IRREPARABLE HARM**

11       Contrary to Defendants' contention, Plaintiff's "sole argument" for irreparable injury is

12   not the deprivation of her constitutional rights.  (Opp'n at 25.)  As the record clearly reflects,

13   Plaintiff is suffering significant pain and distress as a result of her gender dysphoria, which pain

14   and distress Defendants concede would be effectively treated by SRS.  Defendants misstate the

15   holding of *Chalk v. U.S. Dist. Court Cent. Dist. of California*, 840 F.2d 701, 709 (9th Cir. 1988)

16   to argue that "emotional distress in conjunction with other factors may be relevant to – but not

17   dispositive of – the irreparable injury analysis."  (Opp'n at 26.)  In fact, the Ninth Circuit has

18   made clear that, under its holding in *Chalk*, "emotional distress, depression, and anxiety may

19   constitute irreparable injury." *Stanley v. Univ. of S. California*, 13 F.3d 1313, 1324 n.5 (9th Cir.

20   1994).

21       Defendants further argue that a preliminary injunction is not justified because SRS is not

22   "suddenly urgent" (Opp'n at 25, 26), but sudden urgency is not a requirement for obtaining

23   injunctive relief.[14]  The fact that Plaintiff has been suffering severe mental distress for a long time

24   as a result of Defendants' deliberate indifference does not justify requiring Plaintiff to continue to

---

25   [14]   *Soneeya v. Spencer*, 851 F.Supp.2d 228, 252 (D. Mass. 2012) (granting preliminary injunction
      for additional treatment of plaintiff's gender dysphoria); *McNearney v. Washington Dep't of*
26   *Corr.*, No. C11-5930 RBL/KLS, 2012 WL 3545267, at *1 (W.D. Wash. June 15, 2012) *adopted*,
      No. 11-CV-5930-RBL/KLS, 2012 WL 3545218 (W.D. Wash. Aug. 16, 2012) *and modified*, No.
27   C11-5930 RBL/KLS, 2013 WL 392489 (W.D. Wash. Jan. 31, 2013) (finding irreparable injury
      where plaintiff "continues to suffer unnecessary pain despite [current treatment]" even though
28   condition was not new, went untreated for years prior to her incarceration, and no evidence that
      condition had worsened).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 25793839.4                                        14                          REPLY ISO MOT. FOR PRELIM. INJ
                                                                                   3:14-cv-00695-JST

1   endure that distress.  Plaintiff's treating mental health provider recommended SRS as a medically

2   necessary treatment over two years ago and despite Plaintiff's persistent efforts Defendants still

3   have not provided Plaintiff with SRS or any other treatment for the enduring symptoms of her

4   gender dysphoria.

5       Moreover, there has been a change in Plaintiff's health that further necessitates the timely

6   provision of SRS.  For several months at the end of 2014, Plaintiff was removed from hormone

7   therapy entirely because it was interfering with Plaintiff's liver function, which already is

8   impaired as a result of Plaintiff's hepatitis C.  (Gorton Decl. at ¶¶ 19-28.)  Although Plaintiff has

9   resumed hormone therapy, she is on a much lower dose and is being forced to take the "last

10  resort" oral application, which threatens to cause the liver condition to return such that Plaintiff

11  will again have to be removed from the hormone therapy.  (*Id.*)  As a result of the low dosage of

12  hormone therapy Plaintiff is receiving, her hormone levels are very low, which places her at risk

13  for remasculinizing (which can have severe mental health implications) (Gorton Decl. at ¶ 28)

14  and, as Defendants' own expert acknowledged, places her at significant risk for osteoporosis

15  (Levine Decl. at 18).  Thus, in addition to the primary concern of addressing the severe mental

16  distress Plaintiff suffers as a result of her gender dysphoria, SRS also would provide Plaintiff

17  significant physical health benefits.

18      The constitutional deprivations under the Eighth and Fourteenth Amendments that

19  Plaintiff suffers as a result of Defendants' failure to provide SRS also constitute irreparable harm

20  that justifies the requested preliminary injunction, favors the public interest and tips the balance

21  of hardships in Plaintiff's favor.  Defendants' arguments against all are premised upon an

22  assumption that the Court fails to find a constitutional violation.  (Opp'n at 25-28.)  The law is

23  clear, however, that where, as here, constitutional violations have been proven, a preliminary

24  injunction should be granted.  (Motion at 32-35.)

25  **V.    CONCLUSION**

26      For the foregoing reasons, the Court should grant Plaintiff's Motion in its entirety.

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 25793839.4

15

REPLY ISO MOT. FOR PRELIM. INJ
3:14-cv-00695-JST

1

2    Dated:  March 19, 2015                    MORGAN, LEWIS & BOCKIUS LLP

3

4                                              By _____ */s/ Herman J. Hoying*_____
                                                            HERMAN J. HOYING
5
                                               MORGAN, LEWIS & BOCKIUS LLP
6                                              One Market, Spear Street Tower
                                               San Francisco, California  94105-1126
7                                              Telephone:  415.442.1000
                                               Facsimile:  415.442.1001
8                                              hhoying@morganlewis.com
                                               *Attorney for Plaintiff,*
9                                              MICHELLE-LAEL B. NORSWORTHY

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 25793839.4                        16          REPLY ISO MOT. FOR PRELIM. INJ
                                                   3:14-cv-00695-JST