UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JEFFREY B. NORSWORTHY (a/k/a
MICHELLE-LAEL B. NORSWORTHY),

        Plaintiff,

    v.

JEFFREY BEARD, et al.,

        Defendants.

Case No.  14-cv-00695-JST

**AMENDED ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS AND DENYING MOTION TO STAY DISCOVERY**[1]

Re: ECF Nos. 20, 23

Before the Court is Defendants A. Adams, R. Coffin, J. Lozano, M. Spearman, and L. Zamora's Motion to Dismiss Plaintiff's First Amended Complaint.  ECF No. 20, which Defendants A. Newton and D. Van Leer subsequently joined, ECF Nos. 24, 26.  Defendants Adams, Coffin, Lozano, Newton, Spearman, and Zamora have also moved for a protective order to stay discovery until the Court rules on Defendants' Motion to Dismiss.  ECF No. 23.  The Court now GRANTS IN PART and DENIES IN PART Defendants' Motion to Dismiss, and DENIES Defendants' Motion for a Protective Order to Stay Discovery.

## I.  BACKGROUND

### A.  Factual History

For purposes of the Motion to Dismiss, the Court assumes the following facts, pursuant to the allegations of Plaintiff's First Amended Complaint ("FAC"), ECF No. 10.  See Knievel v. ESPN, 393 F.3d 1068, 1072 (9th Cir. 2005).

Plaintiff Norsworthy is a California Department of Corrections and Rehabilitation

---

[1] This amended order is substantively identical to the order issued on November 18, 2014, except for the correction of two syntax errors.

1   ("CDCR") prisoner currently incarcerated at Mule Creek State Prison in Ione, California.[2]  FAC

2   ¶ 2.  She has been in the custody of CDCR since on or around April 15, 1987.  Id.  Norsworthy is a

3   transsexual woman who has experienced gender dysphoria and significant distress resulting from

4   the incongruence between her male physical features and her female gender identity since at least

5   adolescence.  Id. ¶¶ 2, 17.  She identifies and has been living as a woman since the 1990s.  Id. ¶

6   59.  In 1999, after several weeks of testing at a CDCR facility, a psychologist, Dr. Viesti,

7   diagnosed Norsworthy with gender identity disorder, "the only DSM-IV diagnosis available for

8   this condition."  Id. ¶ 18.  The American Psychiatric Association has since published a revised

9   version of its Diagnostic and Statistical Manual of Mental Disorders ("DSM-V"), which replaced

10  the "gender identity disorder" diagnosis with "gender dysphoria."  Id.  Plaintiff has received

11  feminizing hormone therapy and injections to accomplish chemical castration since January 2000.[3]

12  Id. ¶ 19.  As a result of these treatments, Norsworthy's physical features and voice have

13  feminized.  Id. ¶ 20.  Her prison records state that she is a "biological female" based on her

14  estrogen and testosterone levels and describe her as "a pleasant-looking woman, slender and

15  coiffed in a pony tail" who "walk[s] the yard as a woman."  Id.

16          The final step of Norsworthy's treatment is sex reassignment surgery, which would bring

17  her primary and secondary sex characteristics into conformity with her female gender identity and

18  therefore treat the severe mental anguish she experiences as a result of her gender dysphoria.  Id.

19  ¶¶ 21-22.  The surgery would also allow Norsworthy to reduce the high dosages of hormones she

20  receives, which put her at increased risk for heart and vascular conditions and certain types of

21  cancer, conditions that would be particularly dangerous for Norsworthy because she contracted

22  Hepatitis C after being gang raped while in CDCR custody in 2009.  Id. ¶ 22.  In 2012,

23  Norsworthy's treating psychologist, Dr. Reese, expressly prescribed sexual reassignment surgery

---

[2] Plaintiff Norsworthy is a transsexual woman.  The parties refer to her using female pronouns in their filings, and the Court does the same in this Order.
[3] In her Reply to Defendant's Motion for a Protective Order to Stay Discovery, Norsworthy states that she has recently been taken off hormone treatment completely as a result of "recent health complications."  ECF No. 29 at 5.  There is no suggestion that this treatment was discontinued due to any change in her treatment plan for her gender dysphoria.  In any event, for the purpose of deciding the Motion to Dismiss, the Court will consider only the facts pleaded in the FAC.

as medically necessary, finding that "it is clear that clinical medical necessity suggest[s] and mandate[s] a sex change medical operation before normal mental health can be achieved for this female patient." Id. ¶ 23.  Dr. Reese repeatedly renewed his opinion over the following six months.  Id.  CDCR then removed Plaintiff from his care.  Id.

Dr. Reese's finding is supported by leading medical research and standards of care, including the World Professional Association for Transgender Health ("WPATH") Standards of Care for the Health of Transsexual, Transgender, and Gender Nonconforming People, which state that sex reassignment surgery is an "essential and medically necessary" treatment for gender dysphoria in certain cases.  Id. ¶¶ 24-36.  In California, both Medicaid and private health insurance plans offer coverage for health care treatment related to gender transition, including sex reassignment surgery.  Id. ¶ 30.

On September 16, 2012, Norsworthy filed a Patient/Inmate Health Care Appeal seeking sex reassignment surgery as a medically necessary treatment for her gender dysphoria.  Id. ¶ 37. Her request was denied at three levels of review: by Defendant Newton on or around September 28, 2012; by Defendant Adams on or around November 27, 2012; and by Defendant Zamora on October 25, 2013, based on the recommendation of Defendant Coffin that, "[w]hile it appears likely that [Norsworthy's] medical consultants would approve [her] as a candidate for [sex reassignment surgery] as an *elective* procedure, in the opinion of this evaluator the available documentation does not establish [sex reassignment surgery] as medically necessary at this time." Id. ¶¶ 37-52.  Defendant Beard has ultimate authority over Norsworthy's Health Care Appeal and for the implementation of CDCR policy with regard to medically necessary treatment.  Id. ¶ 53.

Norsworthy alleges that because her medical records demonstrate that, under prevailing standards of care and research, sex reassignment surgery is medically necessary, Defendants were fully aware that she faces a serious medical need for sex reassignment surgery and failed to take any reasonable measures to address her ongoing anguish.  Id. ¶¶ 38-39, 43, 49, 51.  Furthermore, each Defendant regarded and applied California Code of Regulations ("C.C.R.") Title 15, Section 3350.1 — which identifies vaginoplasty as a "[s]urgery not medically necessary [that] shall not be provided" except for specified conditions involving damage to the vaginal wall, unless the

3

United States District Court
Northern District of California

1   patient's attending physician prescribes the treatment and "[t]he service is approved by the

2   medical authorization review committee and the health care review committee," 15 C.C.R.

3   § 3350.1(b)(2); 15 C.C.R. § 3350.1(d) — as a de facto bar to Norsworthy's request for sex

4   reassignment surgery, solely because of her status as a transgender woman. FAC, ¶¶ 54-57.

5       As part of Norsworthy's treatment for gender dysphoria, she has changed her name from

6   Jeffrey Bryan Norsworthy to Michelle-Lael Bryanna Norsworthy. Id. ¶ 59. Since the mid-1990s,

7   she has used the name "Michelle" in all settings in which she has the ability to do so. Id. Her

8   treating doctors generally refer to her as "Michelle." Id. ¶ 61. Use of the name "Jeffrey" is a

9   painful reminder of the discrepancy between Norsworthy's female gender identity and the male

10  sex assigned to her at birth, and causes her severe distress and anxiety. Id. ¶ 60. WPATH's

11  Standards of Care recognize name changes as an important part of treatment for gender dysphoria.

12  Id. ¶ 60.

13      A person under the supervision of CDCR is required to obtain the permission of the

14  warden of the facility in which she is housed in order to obtain a change of name from a California

15  Superior Court. Cal. Code Civ. Proc. § 1279.5. To minimize the use of the name "Jeffrey" and

16  the associated pain and distress she experiences, Norsworthy submitted a request for approval for

17  a legal name change to Defendant Spearman, the warden of the CDCR facility to which she was

18  then assigned. FAC, ¶ 64. Although Spearman acknowledged that Norsworthy "is in the process

19  of 'trans-sexualism,'" the request was denied on the basis "that it would not be appropriate to

20  approve a name change to the feminine until the appellant is determined to meet the criteria to be

21  assigned to an institution for female offenders." Id. ¶ 65. At the third level of review, Defendants

22  Van Leer and Lozano found the warden's denial "appropriate as the appellant is still incarcerated

23  in an institution for men." Id. ¶ 68. Defendant Beard has ultimate authority over Norsworthy's

24  request for a legal name change and for the implementation of CDCR policy with regard to inmate

25  name changes. Id. ¶ 71.

26      **B.     Procedural History**

27      Norsworthy initiated this action by filing a complaint under 42 U.S.C. § 1983 on February

28  14, 2014. ECF No. 1. On March 26, 2014, the Court dismissed her claims with leave to amend,

4

1    ECF. No. 4, and on April 2, 2014, the Court issued an Order Appointing Counsel, ECF. No. 7.  On

2    April 15, 2014, the Court dismissed a separate but related action, <u>Norsworthy v. Beard, et al.</u>, No.

3    3:14-cv-00345-JST, concerning Norsworthy's request for a name change, without prejudice to

4    Plaintiff reasserting the name change claims in her amended complaint in this action.  ECF No. 8

5    at 5.

6        Norsworthy filed her First Amended Complaint on July 2, 2014.  ECF No. 10.  She sues

7    Defendants Adams, Beard, Coffin, Lozano, Newton, Spearman, Van Leer, Zamora, and Does 1-30

8    under 42 U.S.C. § 1983, seeking injunctive relief based on Defendants' failure to provide her with

9    medically necessary sex reassignment surgery in violation of the Eighth and Fourteenth

10   Amendments to the United States Constitution and failure to allow her to pursue a legal name

11   change, also in violation of the Eighth and Fourteenth Amendments.  FAC, ¶ 1.  Norsworthy

12   claims that Defendants Adams, Beard, Coffin, Newton, and Zamora were deliberately indifferent

13   to her medical needs and deprived her of her right to equal protection under the laws when they

14   denied her sex reassignment surgery.  <u>Id.</u> ¶¶ 74-88.  She claims that Defendants Beard, Lozano,

15   Spearman, and Van Leer were deliberately indifferent to her medical needs and deprived her of

16   her right to equal protection under the laws when they failed to allow her to seek a legal name

17   change.  <u>Id.</u> ¶¶ 89-99.

18       Norsworthy seeks injunctive relief 1) enjoining Defendants from interfering with the

19   discretion of the mental health and other medical professionals involved in her care; 2) declaring

20   C.C.R. Title 15, § 3350.1(b)(2) unconstitutional on its face and as applied; 3) enjoining

21   Defendants to provide her with adequate medical care, including sex reassignment surgery; and 4)

22   requiring Defendants to allow her to seek a legal name change in the Superior Court of California.

23   <u>Id.</u> ¶¶ 100-03.  She also seeks attorneys' fees and costs.  <u>Id.</u> ¶ 104.

24       On July 9, 2014, the Court determined that the FAC "contains sufficient factual allegations

25   to state a claim under the Eighth and Fourteenth Amendments," and ordered that Norsworthy's

26   complaint should be served on each Defendant.[4]  ECF No. 12.

27   _____

28   [4] The issuance of a screening order under the Prison Litigation Reform Act finding that
     Norsworthy has stated a cognizable claim does not foreclose Defendants from moving to dismiss

United States District Court
Northern District of California

1  **C.     Jurisdiction**

2       The Court has jurisdiction over this action under 28 U.S.C. § 1331.

3  **II.     MOTION TO DISMISS**

4       **A.     Legal Standard**

5       A pleading must contain "a short and plain statement of the claim showing that the pleader

6  is entitled to relief." Fed. R. Civ. P. 8(a)(2).  A motion to dismiss under Rule 12(b)(6) tests the

7  legal sufficiency of the claims in the complaint.  Navarro v. Block, 250 F.3d 729, 732 (9th Cir.

8  2001).

> To survive a motion to dismiss, a complaint must contain sufficient
> factual matter, accepted as true, to state a claim to relief that is
> plausible on its face.  A claim has facial plausibility when the
> plaintiff pleads factual content that allows the court to draw the
> reasonable inference that the defendant is liable for the misconduct
> alleged.

13  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted).

14  "Dismissal is proper when the complaint does not make out a cognizable legal theory or does not

15  allege sufficient facts to support a cognizable legal theory." Cervantes v. Countrywide Home

16  Loans, Inc., 656 F.3d 1034, 1041 (9th Cir. 2011).

17       **B.     Analysis**

18       In their Motion to Dismiss, Defendants argue that:  (1) Norsworthy fails to state an

19  injunctive relief claim because she fails to demonstrate a deprivation of a right under an official

20  state policy; (2) Norsworthy fails to state a claim against Defendants Adams, Coffin, Lozano, and

21  Zamora in their official capacity; (3) Norsworthy fails to state a claim for medical deliberate

22  indifference with respect to her sex reassignment surgery claim; (4) Norsworthy fails to state an

23  equal protection claim; and (5) Norsworthy fails to state a claim for deliberate indifference

24  regarding her name change.  The Court considers these arguments in turn.

25  / / /

26  / / /

27  _____

28  the complaint.  See Teahan v. Wilhelm, 481 F. Supp. 2d 1115, 1119 (S.D. Cal. 2007); see also
Kunamneni v. Gutierrez, No. 08-cv-5154-PJH, 2009 WL 909831, at *2 (N.D. Cal. April 2, 2009).

### 1.       Deprivation of a Right under an Official State Policy

Defendants argue that this action must be dismissed because a state official may be sued in his or her official capacity for prospective injunctive relief from a continuing or impending state action that violates the Constitution or a federal statute only if the plaintiff demonstrates that "the entity itself is a 'moving force' behind the deprivation." Kentucky v. Graham, 473 U.S. 159, 166 (1985). "Because the real party in interest in an official-capacity suit is the governmental entity and not the named official, 'the entity's policy or custom must have played a part in the violation of federal law.'" Hafer v. Melo, 502 U.S. 21, 25 (1991) (quoting Graham, 473 U.S. at 166); see also Berry v. Baca, 379 F.3d 764, 767 (9th Cir. 2004). Here, Defendants argue, Norsworthy has failed to identify a CDCR policy or custom that was the "moving force" behind a deprivation of her constitutional rights. ECF No. 20 at 9.

With respect to sex reassignment surgery, Defendants argue, Norsworthy alleges that Defendants independently determined that surgery was not medically necessary based on their own conclusions or those of non-specialized individuals, not based on any CDCR policy. Id. at 10. Defendants note that the allegations demonstrate that Norsworthy's physicians, as distinct from her treating psychologist, never determined that sex reassignment surgery was medically necessary. Id. at 9. Defendants reject Norsworthy's allegation that Defendants applied § 3350.1 as a de facto bar in denying her administrative grievance as an unreasonable inference that should be disregarded. Id. at 10-11 (citing Daniels-Hall v. Nat'l Educ. Ass'n, 629 F.3d 992, 998 (9th Cir. 2010) (holding that the court need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences")).

Defendants further contend that Norsworthy has failed to identify a state policy or custom that denies name change requests to transsexual women. Id. at 11. Rather, she alleges that CDCR officials denied her request because they determined that "it would not be appropriate" to approve a name change while Norsworthy was incarcerated in an institution for men. Id.

Norsworthy responds that claims against state officials for prospective injunctive relief under Ex Parte Young, 209 U.S. 123 (1908), do not require allegations of a policy or custom and, in any event, she has sufficiently alleged a policy or custom to categorically deny transgender

inmates sex reassignment surgery and name changes.  ECF No. 27 at 18-23.  She argues that official capacity actions against state officials for prospective relief "are not treated as actions against the State," Will v. Michigan Department of State Police, 491 U.S. 58, 71 n.10 (1989); Graham, 473 U.S. at 167 n.14, and that the policy or custom requirement applies only to claims for damages against state officers and claims against municipal or state entities.  ECF No. 27 at 19-20.  She contends that the Supreme Court's analysis in Graham and Hafer is limited to the context of suits for damages, and that the cases relied upon by Defendants do not involve official capacity actions against state officials for injunctive relief.  Id.

Norsworthy argues that even assuming that she must allege that she was deprived of a constitutional right pursuant to a policy or custom to state a claim against Defendants in their official capacities, she has sufficiently alleged a CDCR policy or custom to categorically deny sex reassignment surgery and name changes for transgender inmates.  Id. at 20.  She maintains that she is not required to identify any formal policy, and that whether an unofficial policy or custom exists, whether a constitutional tort was committed by an official with final policy-making authority, and whether an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it, see Gillette v. Delmore, 979 F.2d 1342, 1346-47 (9th Cir. 1992), are all questions of fact not properly resolved on a motion to dismiss.  ECF No. 27 at 21.

Here, Norsworthy alleges that sex reassignment surgery was denied at every level of review despite Defendants' knowledge that it was medically necessary; that each Defendant applied 15 C.C.R. § 3350.1 as a de facto bar to Norsworthy's request; and that Defendants disregarded the recommendation of Norsworthy's treating health care professional, terminated her relationship with this professional, and appointed a non-treating, non-specialized professional to create a pretextual report finding sex reassignment surgery unnecessary.  Id. at 22.  Drawing all reasonable inferences in Norsworthy's favor, she contends that these allegations sufficiently allege that prison officials were acting in accordance with a policy or custom to categorically deny sex reassignment surgery for transgender inmates.  Id.  As for denial of a name change, Norsworthy argues that she has alleged that Defendants Spearman, Lozano, and Van Leer denied her request

United States District Court
Northern District of California

1  based on a policy or custom to deny transgender women prisoners name changes until they are

2  deemed eligible for or have been assigned to a female institution.  Id. at 22-23.

3        Defendants' argument that in this official-capacity action against state officials for

4  injunctive relief, CDCR "policy or custom" must have played a part in the violations is well taken.

5  In Graham, the Supreme Court stated that "in an official-capacity suit the entity's 'policy or

6  custom' must have played a part in the violation of federal law."  473 U.S. at 166.  Although

7  Norsworthy is correct that Graham involved an action for damages, the Supreme Court's statement

8  that "implementation of state policy or custom may be reached in federal court only because

9  official-capacity actions for prospective relief are not treated as actions against the State" suggests

10  that it contemplated that the "policy or custom" requirement should apply in actions for

11  prospective relief.  Id. at 167 n.14; cf. Los Angeles Cnty. v. Humphries, 562 U.S. 29 (2010)

12  (holding that, in actions against municipal entities, the requirement that civil rights plaintiffs show

13  that their injury was caused by municipal policy or custom is equally applicable, irrespective of

14  whether the remedy sought is money damages or prospective relief).  Furthermore, in a case cited

15  by neither party, the Ninth Circuit stated that Idaho Department of Corrections administrators sued

16  for injunctive relief were "liable in their official capacities only if policy or custom played a part

17  in the violation of federal law."  Gomez v. Vernon, 255 F.3d 1118, 1127 (9th Cir. 2001); see also

18  Dunsmore v. California, No. 11-cv-7141-DOC (JCG), 2012 WL 3809413, at *3-4 (C.D. Cal. July

19  26, 2012) (recommending dismissal of inmate's official-capacity claim for failure to plausibly

20  connect policies to the specific conduct that allegedly violated his rights), report &

21  recommendation adopted, 2012 WL 3810255 (C.D. Cal. Sept. 4, 2012), aff'd sub nom. Dunsmore

22  v. Cash, 549 F. App'x 680 (9th Cir. 2013).

23        This conclusion does not, however, require that Norsworthy's claims be dismissed.  The

24  Court finds that Norsworthy has adequately alleged that a policy or custom played a part in the

25  constitutional violations she alleges.  In analogous municipal liability cases, the Ninth Circuit

26  permits § 1983 plaintiffs to establish liability in one of three ways: (1) by proving that an

27  employee committed the violation pursuant to a formal policy or longstanding practice or custom

28  that constitutes the standard operating procedure of the governmental entity; (2) by establishing

9

United States District Court
Northern District of California

that the individual who committed the constitutional tort was an official with final policy-making authority; or (3) by proving that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it.  Gillette, 979 F.2d at 1346-47.  Norsworthy has alleged that the Defendants involved in the denial of her request for sex reassignment surgery were uniformly aware of her serious medical need for sex reassignment surgery and were deliberately indifferent to this need, id. ¶¶ 39, 43, 49, 51, 76; that they applied 15 C.C.R. § 3350.1 as a de facto bar to her request, id. ¶¶ 56, 82; and that she pursued her claim through the final level of administrative review, id. ¶ 52.  With respect to her name change claims, Norsworthy has alleged that she pursued her request through the final level of administrative review and that Defendants denied the request based upon a policy that inmates in CDCR facilities for men should not be allowed to legally adopt a normatively feminine name until they meet the criteria for transfer to a women's institution.  Id. ¶¶ 65-66, 68, 70, 96.  Drawing all reasonable inferences in favor of Norsworthy, the Court finds that she has pleaded sufficient facts to allow the Court to reasonably infer that official policies or customs played a part in the constitutional violations she alleges.

### 2.    Official Capacity Claims Against Defendants Adams, Coffin, Lozano, and Zamora[5]

Defendants argue that Norsworthy has failed to state a claim under § 1983 against Defendants Adams, Coffin, Lozano, and Zamora because she has not alleged that they could provide the relief she requests.  ECF No. 20 at 12.  "[T]he exception to Eleventh Amendment immunity applicable to prospective injunctive relief . . . applies only to state officials with the ability to provide injunctive relief in their official capacities."  Roberts v. Cal. Dep't of Corr., No. 04-cv-3861-JF, 2007 WL 951289, at *2 (N.D. Cal. Mar. 27, 2007) (citing Graham, 472 U.S. at 167 n.14; Young, 209 U.S. at 159-60); see also Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-

---

[5] Defendants Newton and Van Leer joined this argument after the Motion to Dismiss was filed and contend that it "appl[ies] equally" to them.  ECF Nos. 24, 26.  Norsworthy notes that it is "unclear" whether these Defendants also contend that they lack the authority to provide the relief requested, but she notes that the arguments in her Opposition apply equally to Newton and Van Leer.  ECF No. 27 at 23 n.17.

United States District Court
Northern District of California

61 (1992) (holding that, for a plaintiff to have standing, it must be likely that the injury will be redressed by a favorable decision).  Defendants argue that these officials were only responsible for reviewing Norsworthy's administrative grievances and that Norsworthy has not alleged that they could ensure that her constitutional rights are not violated, rescind sections of the California Code of Regulations, or ensure the implementation of new CDCR policies.  ECF No. 20 at 12-13.  As a result, Defendants urge that Norsworthy's claim for injunctive relief against these Defendants should be dismissed as a matter of law.

Norsworthy responds that Defendants' argument is misplaced because she has sufficiently alleged that each Defendant was personally involved in denying either her request for sex reassignment surgery, her request for a name change, or both.  ECF No. 27 at 23 (citing Starr v. Baca, 652 F.3d 1202, 1207 (9th Cir. 2011) ("A defendant may be held liable as a supervisor under § 1983 if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.") (internal quotation marks omitted)).  In addition, Norsworthy seeks not only a revision of prison policy, but also an injunction preventing Defendants from interfering with the discretion of her medical care providers and ordering sex reassignment surgery and a name change.  ECF No. 27 at 24.  Based on each Defendant's involvement in depriving Norsworthy of her constitutional rights, she contends that each is in a position to correct the harm. Id.  Whether Defendants have authority to provide any of the requested injunctive relief is, at most, a disputed issue of fact.  Id.  Finally, Norsworthy contends that, at the pleading stage, a plaintiff need not bring suit against the exact officials ultimately responsible for enforcement, because further discovery may lead to amendments to name more appropriate officials.  Id.

The Court rejects Defendants' argument that Defendants Adams, Coffin, Lozano, Newton, Van Leer, and Zamora must be dismissed at this stage.  The FAC alleges that each Defendant was personally involved in the administrative denial of Norsworthy's requests for medically necessary sex reassignment surgery and for a name change.  Norsworthy asks the Court to enter injunctive relief "enjoining Defendants from interfering with the discretion of the mental health and other medical professionals involved in Plaintiff's care" and "enjoining Defendants to provide Plaintiff

with adequate medical care, including [sex reassignment surgery]." FAC, ¶¶ 100, 102. Even if Defendants are correct that these named officials are not in a position to change CDCR policies or amend the California Code of Regulations, their role in reviewing Norsworthy's administrative requests for sex reassignment surgery and a name change suggest that they are in a position to approve administrative requests, including the provision of "adequate medical care" as recommended by Norsworthy's health care providers, going forward. The Court finds that, at this stage, Defendants Adams, Coffin, Lozano, Newton, Van Leer, and Zamora are proper parties to this case.

### 3. Medical Deliberate Indifference Regarding Sex Reassignment Surgery

Defendants next argue that Norsworthy has failed to state a claim for deliberate indifference because her allegations establish only a difference of medical opinion between Norsworthy and her psychologist, Dr. Reese, and Defendants Newton, Adams, Coffin, and Zamora, not "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs" in violation of the Eighth Amendment. ECF No. 20 at 14 (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976)). Even assuming that Norsworthy has a serious medical need, Defendants argue, she cannot meet the subjective prong of the deliberate indifference test, which requires a showing that a prison official knew of facts from which the inference could be drawn that a substantial risk of serious harm existed, actually drew that inference, and then disregarded an excessive risk to the inmate's health. Id. (citing Farmer v. Brennan, 511 U.S. 825, 837 (1994)).

Here, Defendants contend, Norsworthy has not shown that any Defendant possessed a sufficiently culpable state of mind to substantiate an Eighth Amendment deliberate indifference claim. Id. at 16. Norsworthy's allegations that Defendants should have known that sex reassignment surgery was medically necessary based on her medical history and research are inadequate to state a claim for deliberate indifference. Id. Defendants contend that Norsworthy has not alleged that she ever requested sex reassignment surgery from any of her treating physicians or psychologists prior to filing her administrative grievance at the third level of review; that the named Defendants knew that sex reassignment surgery was medically necessary; that any medical doctor ever prescribed surgery or recommended it as a treatment option; or that

Defendants knew of the research cited in the FAC.  Id.[6]  She alleges only a disagreement about

treatment options between her caregivers.  Id. at 15.  In this situation, she must demonstrate that

the chosen course of treatment was "medically unacceptable under the circumstances" and chosen

"in conscious disregard of an excessive risk" to her health.  Id. at 14-15 (citing Toguchi v. Chung,

391 F.3d 1051, 1060 (9th Cir. 2004)).  In Defendants' view, the fact that prison staff provided

Norsworthy with mental health care and feminizing hormone and chemical castration treatments

belies any claim that they were deliberately indifferent to her gender dysphoria or acted in

conscious disregard of her health.  Id. at 15.

The Court is not persuaded by this argument.  The FAC does not allege that there was a

genuine difference of medical opinion; rather, it alleges that Defendants' purported reliance on the

opinions of non-specialized, inexperienced health care providers was clearly unreasonable and

pretextual and thus evidence of deliberate indifference.  ECF No. 27 at 2-3 (citing Snow v.

McDaniel, 681 F.3d 978, 988 (9th Cir. 2012) ("Based on the unchallenged medical records and

inferences drawn in favor of Snow, a reasonable jury could conclude that the decision of the non-

treating, non-specialist physicians to repeatedly deny the recommendations for surgery was

medically unacceptable under all of the circumstances."), overruled on other grounds by Peralta v.

Dillard, 744 F.3d 1076, 1083 (9th Cir. 2014); Colwell v. Bannister, 763 F.3d 1060, 1069 (9th Cir.

2014) (denying summary judgment where the record indicated that prison officials "ignored the

recommendations of treating specialists and instead relied on the opinions of non-specialist and

non-treating medical officials who made decisions based on an administrative policy"); Hamilton

v. Endell, 981 F.2d 1062, 1067 (9th Cir. 1992) (denying summary judgment where Hamilton

alleged that an expert opinion "was not solicited in good faith, and that it was sought simply as a

device to allow the prison official [sic] to proceed with their predetermined decision"), overruled

_____

[6] Defendants also state that Norsworthy has failed to allege that she meets the WPATH
preconditions for sex reassignment surgery because she has not obtained two referral letters from
qualified mental health professionals.  ECF No. 20 at 17.  Since Norsworthy is incarcerated, the
Court cannot assume that Norsworthy would be able to obtain such referrals without Defendants'
assistance, particularly in light of her allegation that Defendants removed as her care provider the
one mental health professional who repeatedly opined that sex reassignment surgery was
medically necessary.  FAC at ¶ 23.

United States District Court
Northern District of California

1    on other grounds by Estate of Ford v. Ramirez-Palmer, 301 F.3d 1043, 1045 (9th Cir. 2002)).

2          Here, Norsworthy has alleged that Dr. Coffin, a non-treating medical professional with no

3    significant experience or training in the treatment of transsexual patients, created a pretextual

4    report to support denial of sex reassignment surgery and that each Defendant denied the surgery

5    even though they knew it to be medically necessary based on Norsworthy's records and prevailing

6    medical standards.  ECF No. 27 at 3-4.  The Court agrees with Norsworthy's contention that she

7    should have the opportunity to explore the Defendants' motives and the extent and nature of their

8    knowledge through discovery.  Id. at 4-5.  Defendants' argument that Norsworthy's medical

9    indifference claim must fail because she received *some* treatment for her gender dysphoria is also

10   unconvincing, as a prisoner need not prove that she was completely denied medical care in order

11   to prevail.  Id. at 6-7; see Lopez v. Smith, 203 F.3d 1122, 1132 (9th Cir. 2000) ("A prisoner need

12   not prove that he was completely denied medical care. Rather, he can establish deliberate

13   indifference by showing that officials intentionally interfered with his medical treatment.")

14   (citation omitted).

15         In reply, Defendants note that Defendants Newton and Adams reviewed Norsworthy's

16   grievance before Reese had issued his opinion recommending sex reassignment surgery, and that

17   Coffin acknowledged that Norsworthy's gender dysphoria caused her distress but noted that no

18   physician had ever found surgery medically necessary.  ECF No. 30 at 6-7.  Defendants

19   distinguish cases in which defendants ignored the recommendations of plaintiff's treating

20   physicians, see Colwell, 763 F.3d at 1069-70; Hamilton, 981 F.2d at 1067, on the basis that

21   Defendants explicitly took into account that none of Norsworthy's treating physicians

22   recommended sex reassignment surgery as medically necessary treatment and Defendant Coffin

23   personally examined Norsworthy before issuing his opinion.  ECF No. 30 at 7.  Defendants also

24   rely on Peralta v. Dillard, 744 F.3d 1076 (9th Cir. 2014), for the proposition that prison staff are

25   not deliberately indifferent when they simply review the medical care provided by others.  ECF

26   No. 30 at 7.  In this case, Defendants argue, Norsworthy has alleged that CDCR provided her

27   treatment by gender and endocrinology specialists and denied her grievance on the basis that these

28   specialists had not recommended sex reassignment surgery as medically necessary, not because of

                                                    14

United States District Court
Northern District of California

animus, improper motive, or medical deliberate indifference.  Id. at 8.  They reject the suggestion that the filing of this lawsuit has placed Defendants on notice.  Id. at 10 (citing Peralta, 744 F.3d at 1087 ("Peralta argues that the lawsuit itself put Dillard on notice, but he cites no cases holding that the mere filing of a lawsuit can create independent liability under section 1983.")).

The Court finds that Norsworthy has adequately stated a claim for medical indifference within the meaning of Estelle v. Gamble, 429 U.S. 97 (1976).  Prison officials violate their constitutional obligation only through "deliberate indifference to serious medical needs of prisoners," including by "intentionally denying or delaying access to medical care."  Estelle, 429 U.S. at 104-05.  Neither negligence nor gross negligence is sufficient to warrant liability under the Eighth Amendment.  See Farmer, 511 U.S. at 837.  But the FAC does not allege that Defendants "should have known" that sex reassignment surgery was medically necessary.  Rather, it alleges that Defendants were fully aware that Norsworthy faces a serious medical need for sex reassignment surgery and failed to address her ongoing anguish.  FAC, ¶¶ 39, 43, 49, 51.  It further alleges that after Norsworthy's treating psychologist explicitly recommended sex reassignment surgery, Norsworthy was removed from his care and Defendant Coffin was assigned to prepare a pretextual report recommending that sex reassignment surgery be denied.  Id. ¶¶ 23, 45, 49.

Defendants' suggestion that Norsworthy was denied sex reassignment surgery based on "a disagreement between her various caregivers," ECF No. 20 at 15, is unpersuasive.  The FAC states that Norsworthy's treating psychologist concluded that sex reassignment surgery is medically necessary and that Defendant Coffin, who examined Norsworthy but was not involved in her care, came to a contrary conclusion.  FAC, ¶¶ 23, 47.  It does not state that any medical professional treating Norsworthy concluded that sex reassignment surgery was not medically necessary, or issued any opinion other than the recommendations made by Reese.  Because there is no recommendation by a treating physician or other medical provider against sex reassignment surgery, this is not a case in which prison staff have simply reviewed and affirmed medical decisions made by others.  See Peralta, 744 F.3d at 1085-86.  Instead, drawing all inferences in her favor, Norsworthy has alleged that Defendants deliberately denied her necessary medical

15

treatment.  Whether Defendants in fact had the requisite mental state to support an Eighth

Amendment deliberate indifference claim is a question suitable for exploration in discovery.

### 4.    Equal Protection

To state an equal protection claim under § 1983, Norsworthy must allege that "the

defendants acted with an intent or purpose to discriminate against [her] based upon membership in

a protected class."  Furnace v. Sullivan, 705 F.3d 1021, 1030 (9th Cir. 2013).  The essence of the

Equal Protection Clause is a requirement that similarly situated persons be treated alike.  Ariz.

Dream Act Coal. v. Brewer, 757 F.3d 1053, 1063 (9th Cir. 2014).

Defendants argue that Norsworthy fails to state an equal protection claim because the

California regulations concerning surgeries that are not medically necessary, 15 C.C.R. §

3350.1(b), (d), and requiring that inmates' requests for a legal name change must be reviewed by

the warden, 15 C.C.R. § 3294.5(a), (b), do not discriminate based on classes of individuals.  ECF

No. 20 at 18.  Rather, the regulations concerning surgeries make distinctions based on specific

medical conditions and necessary treatments, and incorporate important procedural safeguards to

ensure that permanent, life-changing surgery is not undertaken without appropriate medical

approval.  ECF No. 30 at 13-15.  Defendants also contend that the FAC fails to allege that these

facially neutral regulations have a disparate impact and that this disparate impact is the result of a

discriminatory purpose.  ECF No. 20 at 19 (citing PMG Int'l Div. LLC v. Rumsfeld, 303 F.3d

1163, 1172-73 (9th Cir. 2002) (noting that, in the Fifth Amendment context, "a disparate impact

claim challenging a facially neutral statute requires a showing of discriminatory intent or of a stark

pattern of racially disparate enforcement") (internal quotation marks and citations omitted)).

Finally, Defendants contend that Norsworthy fails to allege membership in a protected class.  Id.

(citing Holloway v. Arthur Andersen & Co., 566 F.2d 659, 663-64 (9th Cir. 1977)).

As an initial matter, Holloway is no longer good law.  Schwenk v. Hartford, 204 F.3d

1187, 1201 (9th Cir. 2000).  Defendants state that Schwenk overruled Holloway "on other

grounds," ECF No. 20 at 19, but even a casual reading of Schwenk shows that it overruled

precisely the conclusions in Holloway on which Defendants rely.  Defendants quote Holloway for

the propositions that "transsexuals are not necessarily 'a discrete and insular minority' . . . nor has

it been established that transsexuality is an 'immutable characteristic determined solely by the accident of birth' like race or national origin;" and "the complexities involved in merely defining the term 'transsexual' would prohibit a determination of suspect classification for transsexuals." Id. (quoting Holloway, 566 F.2d at 663-64 (citations omitted)).   Schwenk unmistakably overruled those holdings.

In Schwenk, the Ninth Circuit explained that gender means "an individual's sexual identity," and that, under the Supreme Court's holding in Price Waterhouse v. Hopkins, 490 U.S. 228 (1989),[7] when a defendant's action is based upon the fact that the plaintiff fails to "conform to socially-constructed gender expectations," the defendant has engaged in gender-based discrimination.  Schwenk, 204 F.3d at 1201-02.  Schwenk also explicitly rejected Holloway's reasoning.  Id. at 1201.  Although Schwenk was decided in the context of a transgender woman seeking to bring a claim under the Violence Against Women Act, its reasoning applies equally to discrimination alleged to violate the Equal Protection Clause and therefore discrimination against transgender individuals is a form of gender-based discrimination subject to intermediate scrutiny. Applying Schwenk here, the Court concludes that discrimination based on transgender status independently qualifies as a suspect classification under the Equal Protection Clause because transgender persons meet the indicia of a "suspect" or "quasi-suspect classification" identified by the Supreme Court.  As the Eleventh Circuit observed in Glenn v. Brumby, 663 F.3d 1312 (11th Cir. 2011), "[a] person is defined as transgender precisely because of the perception that his or her behavior transgresses gender stereotypes. . . . There is thus a congruence between discriminating against transgender and transsexual individuals and discrimination on the basis of gender-based behavioral norms."  Id. at 1316.  And as the Ninth Circuit said in Schwenk, albeit outside the context of the Equal Protection Clause, "what matters . . . is that in the mind of the perpetrator the discrimination is related to the sex of the victim: here, for example, the perpetrator's actions stem from the fact that he believed that the [transsexual] victim was a man who 'failed to act like' one."

---

[7] In Price Waterhouse, the Supreme Court held that discrimination on the basis of gender stereotyping is sex-based discrimination.  490 U.S. at 250–51 (plurality op.); id. at 258–61 (White, J., concurring); id. at 272–73 (O'Connor, J., concurring).

United States District Court
Northern District of California

1    *Schwenk*, 204 F.3d at 1202.  For these reasons, the Court concludes that discrimination on the

2    basis of transgender status is subject to intermediate scrutiny.  *Glenn* at 1320; *cf.* *SmithKline*

3    *Beecham Corp. v. Abbott Labs.*, 740 F.3d 471, 481 (9th Cir. 2014) (holding that *United States v.*

4    *Windsor*, 133 S. Ct. 2675 (2013) "requires that heightened scrutiny be applied to equal protection

5    claims involving sexual orientation"). [8]

6            In support of her Equal Protection Clause claim under 42 U.S.C. § 1983, Norsworthy

7    alleges that Defendants acted with an intent or purpose to discriminate against her based upon her

8    membership in a protected class.  *See* *Furnace*, 705 F.3d at 1030.  Specifically, she alleges that

9    "Defendants intentionally treat Plaintiff differently from non-transgender female inmates seeking

10   vaginoplasty due to her gender and transgender status" by barring her from such treatment or, at a

11   minimum, holding her to a more onerous standard, and that Defendants "discriminated against

12   Plaintiff by refusing to permit her to seek a legal name change as a result of her gender and

13   transgender status."  FAC, ¶¶ 84, 96.  Norsworthy further contends that 15 C.C.R. § 3350.1 is

14   facially discriminatory because it explicitly distinguishes between treatment for transsexual

15   women that is designated as presumptively "not medically necessary" (i.e. castration and

16   vaginoplasty for treatment of gender dysphoria) and the same treatments for non-transgender

17   women (i.e. vaginoplasty for treatment of cystocele or rectocele), which are explicitly exempted

18   from this bar.  ECF No. 27 at 16-17.  Because all persons affected by these exclusions are

19   transgender women, Norsworthy argues, the regulation is facially discriminatory.  *Id.* at 17.

20           The application of intermediate scrutiny requires the government to show that its gender

21   classification is substantially related to an important governmental interest, "requiring an

22   exceedingly persuasive justification."  *Coal. for Econ. Equity v. Wilson*, 122 F.3d 692, 702 (9th

23   Cir. 1997), *as amended on denial of reh'g and reh'g en banc (Aug. 21, 1997), as amended (Aug.*

24

25   [8] The Ninth's Circuit's conclusion that heightened scrutiny should be applied to Equal Protection
     claims involving discrimination based on sexual orientation, *see* *SmithKline*, 740 F.3d at 481;
26   *Latta v. Otter*, Nos. 14-35420, 14-35421, 12-17668, 2014 WL 4977682, at *4 (9th Cir. Oct. 7,
     2014), applies with at least equal force to discrimination against transgender people, whose
27   identity is equally immutable and irrelevant to their ability to contribute to society, and who have
     experienced even greater levels of societal discrimination and marginalization.
28

26, 1997) (quoting City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 441 (1985)).

Here, Norsworthy has alleged that each Defendant discriminated against her on the basis of her transgender status.  She alleges that, in considering her need for medically necessary surgery, and vaginoplasty in particular, Defendants treated her differently from a similarly situated non-transgender woman in need of medically necessary surgery.  With respect to her request for a name change, she has alleged that the Defendants' rationale for denying her request — that a name change to a normatively feminine name is inappropriate until she is eligible to be housed in a women's facility — evidences a clear difference in treatment with regard to name changes based on transgender status.  Defendants argue that Norsworthy is not a member of a protected class, but otherwise offer nothing to defend the regulation or alleged policies and conduct at issue from an equal protection challenge.  ECF No. 20 at 18-19.  They articulate no important governmental interest, much less describe how their gender classification – which makes it more difficult for a transgender person to receive vaginoplasty than it is for a cisgender woman[9] – is substantially related to that interest.

The Court concludes that Norsworthy has adequately stated a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment.  See Furnace, 705 F.3d at 1030.  At this early stage in the litigation, before Norsworthy has had the opportunity to develop her claims through discovery, she must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.  The Court concludes that Norsworthy's allegations meet this standard with respect to her equal protection claims.

### 5.      Deliberate Medical Indifference Regarding Norsworthy's Name Change

Finally, Defendants contend that Norsworthy's allegations that prison officials did not permit her to pursue a legal name change fail to state a claim under § 1983 because although

---

[9] "Cisgender is a term describing individuals whose gender corresponds with the legal sex that they were assigned at birth."  Olga Tomchin, Bodies and Bureaucracy: Legal Sex Classification and Marriage-Based Immigration for Trans* People, 101 Cal. L. Rev. 813, 862 (2013).

United States District Court
Northern District of California

United States District Court
Northern District of California

1   Norsworthy claims that she suffers from mental and emotional harm when the name "Jeffrey" is

2   used, conduct that amounts to verbal abuse is not cruel and unusual punishment.  ECF No. 20 at

3   20 (citing <u>Austin v. Terhune</u>, 367 F.3d 1167, 1171-72 (9th Cir. 2004)).  Moreover, Norsworthy

4   fails to allege that the name change is an objectively serious medical need because she has not

5   alleged that any doctor has determined or even commented that she needs to change her name for

6   medical reasons or that use of her legal name has seriously affected her daily activities.  <u>Id.</u> at 21

7   (citing <u>Wood v. Housewright</u>, 900 F.2d 1332, 1337-41 (9th Cir. 1990)).  Finally, regarding the

8   subjective prong of the analysis, Norsworthy fails to allege that prison officials were deliberately

9   indifferent to her medical need in refusing her name change because she has failed to allege that

10  the Defendants involved in denying her request were medical professionals or knew that a legal

11  name change was an effective treatment for her gender dysphoria.  <u>Id.</u>

12        Norsworthy responds that she is not required to "establish" that a legal name change is an

13  objectively serious medical need at the pleading stage.  ECF No. 27 at 8.  She need only provide

14  allegations sufficient to give Defendants fair notice of what the claim is and the grounds on which

15  it rests.  Norsworthy has alleged that the use of her name is a "painful reminder" of her condition

16  that causes her "mental anguish and suffering," "pain and distress," and "severe emotional and

17  psychological stress and anxiety," and she contends that further resolution of the nature and extent

18  of the suffering she experiences requires further factual development.  <u>Id.</u> at 9.  She distinguishes

19  the exacerbation of her mental health condition from the "verbal abuse" at issue in <u>Austin v.</u>

20  <u>Terhune</u>, and notes that <u>Austin</u> was decided at summary judgment.  <u>Id.</u> at 10.  With respect to the

21  subjective prong of the deliberate indifference analysis, Norsworthy argues that she has alleged

22  that Defendants were aware of her gender dysphoria and the associated mental anguish resulting

23  from the use of her legal name.  <u>Id.</u>  The extent of Defendants' knowledge, she argues, must be

24  developed through discovery.  <u>Id.</u>

25        The Court concludes that Norsworthy's claim for violation of the Eighth Amendment

26  based on Defendants' failure to allow her to pursue a legal name change is insufficiently pleaded

27  and should be dismissed.  Prison officials violate their constitutional obligation only through

28  "deliberate indifference to serious medical needs."  <u>Estelle</u>, 429 U.S. at 104-05.  This indifference

may be manifested "by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Id. In the Ninth Circuit, to maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show a "serious medical need" and that "the defendant's response to the need was deliberately indifferent." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). The second prong "is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. Indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." Id. (internal citations and quotation marks omitted). An inadvertent or negligent failure to provide adequate medical care does not state a claim under § 1983. Estelle, 429 U.S. at 105-06.

Norsworthy does not allege that any of the Defendants involved in denying her request for a legal name change are medical professionals, or allege facts sufficient for this Court to reasonably infer that these Defendants knew that Norsworthy had a medical need for a legal name change. She states that Defendants Spearman, Van Leer, and Lozano were aware of her gender dysphoria, but she does not allege that they reviewed her medical records, consulted with her treating health care providers, were familiar with standards of care for the treatment of gender dysphoria, or were otherwise aware that their decision to deny her request for a legal name change would have ramifications for her medical care. Norsworthy therefore has not sufficiently alleged that these Defendants were deliberately indifferent to her medical needs.

## III.   MOTION TO STAY DISCOVERY

Defendants move to stay discovery "on the ground that it would be unduly burdensome to respond to discovery requests regarding claims that should be dismissed." ECF No. 23 at 1. The Court having found Counts One, Two, and Four of Plaintiff's FAC to be viable, the Motion to Stay is DENIED.

### CONCLUSION

The Court hereby GRANTS IN PART and DENIES IN PART Defendants' Motion to Dismiss and DENIES Defendants' Motion to Stay Discovery. Plaintiff's § 1983 claim based upon

United States District Court
Northern District of California

deprivation of her Eighth Amendment rights resulting from Defendants' failure to allow her to

obtain a legal name change is DISMISSED WITHOUT LEAVE TO AMEND.  In all other

respects, Defendants' Motion to Dismiss is DENIED.

**IT IS SO ORDERED.**

Dated:  March 31, 2015

_____
JON S. TIGAR
United States District Judge